CALLADINE v HYSTER COMPANY

Docket No. 83785. Submitted March 4, 1986, at Detroit. Decided
    August 7, 1986. Leave to appeal denied, 428 Mich —.

Panzy Calladine, individually and as guardian of William Calla-
    dine, brought an action in the Wayne Circuit Court against
    Hyster Company and others for damages for injuries sustained
    by William Calladine when he was struck by a forklift which
    was not intended to, and could not lawfully, be driven on public
    highways. Defendants filed a third-party claim against Dana
    Corporation for indemnification. Dana moved for summary
    judgment. The court, Lucille A. Watts, J., granted partial
    summary judgment, holding that the forklift was a motor
    vehicle for purposes of the owner's liability statute and that
    Dana had agreed to indemnify defendants for products liability
    claims. Dana appealed by leave granted.

    The Court of Appeals held:
    The court erred in holding the forklift to be a motor vehicle.
It did not err, however, in holding that Dana had agreed to
indemnify defendants for products liability claims.

    1. A device which is not actually transported or drawn upon
a highway and which cannot lawfully be operated on a high-
way is not a vehicle within the purview of the owner's liability
statute.

    2. Dana's agreement to indemnify defendants for "all liabil-
ity" arising out of the use, maintenance, repair and/or delivery
of the forklift included indemnification for products liability
claims. Use of the word "all" in an indemnity contract, in its
ordinary and natural meaning, evidences an intent by the
parties to employ the broadest classification possible, leaving no
room for exceptions.

    Affirmed in part and reversed in part.

1. AUTOMOBILES — OWNER'S LIABILITY ACT — VEHICLES.
    A device which is not actually transported or drawn upon a

REFERENCES

Am Jur 2d, Automobiles and Highway Traffic § 1.
Am Jur 2d, Contracts §§ 1, 240 et seq.
See the annotations in the Index to Annotations under Automobiles
    and Highway Traffic; Contracts.

highway and which cannot lawfully be operated on a highway is not a vehicle within the purview of the owner's liability statute (MCL 257.79, 257.401; MSA 9.1879, 9.2101).

2. INDEMNITY — JUDICIAL CONSTRUCTION.

Indemnity contracts are construed in accordance with the rule for construction of contracts generally; the cardinal rule for their construction is to enforce them so as to effectuate the intentions of the parties, which intention is determined by considering not only the language of the contract but also the situation of the parties and the circumstances surrounding the contract; in order to be effective, the terms must be unequivocal, and the contract will be construed most strictly against the drafting party and the indemnitee.

3. INDEMNITY — JUDICIAL CONSTRUCTION — "ALL".

Use of the word "all" in an indemnity contract, in its ordinary and natural meaning, evidences an intent by the parties to employ the broadest classification possible, leaving no room for exceptions.

*Sachs, Nunn, Kate, Kadushin, O'Hare, Helveston & Waldman, P.C.* (by *Barry P. Waldman*), for plaintiff.

*Kohl, Secrest, Wardle, Lynch, Clark & Hampton* (by *Roger F. Wardle, Edward D. Plato,* and *Lanie F. Anderson*), for defendant Dana Corporation.

*Harvey, Kruse, Westen & Milan, P.C.* (by *James Sukkar*), for defendants Hyster Company and Hyster Credit Corporation.

*Kitch, Saurbier, Drutchas, Wagner & Kenney, P.C.* (by *James D. Zazakis*), for defendant Modern Handling Equipment Company.

Before: GILLIS, P.J., and GRIBBS and N. J. LAMBROS,* JJ.

PER CURIAM. Plaintiff, Panzy Calladine, individ-

---

* Circuit judge, sitting on the Court of Appeals by assignment.

ually and as guardian of William Calladine, brought suit in the Wayne Circuit Court against defendants Hyster Company, Hyster Credit Corporation, and Modern Handling Equipment Company. Plaintiff alleged that Modern Handling, as owner of a forklift, was responsible for all injuries resulting from the negligent operation of the forklift and that defendants were liable to them based on defective product design and manufacture. Defendants filed a third-party complaint against Dana Corporation alleging that Dana had agreed to indemnify and hold them harmless from any and all liability resulting from the forklift. Dana moved for summary judgment, and on March 8, 1985, the trial court issued an order granting in part and denying in part the motion for summary judgment. The trial court found as a matter of law that the forklift was a motor vehicle for purposes of Michigan's owner's liability statute, MCL 257.401; MSA 9.2101. Apparently, it also found that Dana had agreed to indemnify defendants for products liability claims. Third-party plaintiffs' claims of common-law indemnity were dismissed with prejudice by stipulation of the parties. Dana appeals by leave granted.

On May 30, 1978, William Calladine, an employee of Dana, was struck and seriously injured by a Hyster Model S80B forklift (or lift truck) driven by a coemployee. The accident occurred inside the press room of Dana's facility in Ecorse.

The forklift was designed and manufactured by defendant Hyster Company and was leased or sold to Dana by a Hyster subsidiary on or about September 29, 1976. Model S80B forklifts were eight thousand pound capacity forklifts equipped with low-profile, cushion tires. The forklifts did not have headlights, tail lights, turn signals, seat belts, windshields, back-up lights, hazard warning flash-

ers, or rearview mirrors as standard equipment. The forklift involved in this case had been operated on private roads outside of Dana's plant, but it had not been operated on roads open to the general public. The owner's manual for the S80B forklifts indicates that, "NOTE: Hyster lift trucks are not intended for operation on public roads."

On appeal, Dana raises two issues. First, it contends that the trial court erred as a matter of law when it determined that the forklift which struck William Calladine was a "motor vehicle" for purposes of the owner's liability statute. We agree.

MCL 257.401; MSA 9.2101, the owner's liability statute, reads, in pertinent part:

> The owner of a *motor vehicle* shall be liable for any injury occasioned by the negligent operation of such *motor vehicle* whether such negligence consists of a violation of the provisions of the statutes of the state or in the failure to observe such ordinary care in such operation as the rules of the common law requires. [Emphasis added.]

That provision is part of the civil liability act, MCL 257.401 *et seq.;* MSA 9.2101 *et seq.,* which is Chapter IV of the Michigan Vehicle Code, MCL 257.1 *et seq.;* MSA 9.1801 *et seq.*

In *Frazier v Rumisek,* 358 Mich 455; 100 NW2d 442 (1960), the Supreme Court noted:

> The owner liability statute before us was passed in response to an overwhelming public need. Common-law liability, circumscribed as it was by the doctrine of bailment, *respondeat superior,* agency, and the like, was unable to cope with the rising tide of injuries resulting from the use of the new mechanism, the automobile. Principal among the legislative answers were the owner liability laws.

Their purpose, as Mr. Justice EDWARDS held in *Moore v Palmer,* 350 Mich 363 [86 NW2d 585 (1957)], was to extend and complement the common law. The legislative theory was simple to state and broadly applicable: An owner was liable for the negligent operation of the machine owned by him when he had consented to its use. [358 Mich 457.]

MCL 257.33; MSA 9.1833 of the Michigan Vehicle Code defines motor vehicle as "every vehicle which is self-propelled and every vehicle which is propelled by electric power obtained from overhead trolley wires, but not operated upon rails." MCL 257.79; MSA 9.1879 of the code defines vehicle as "every device in, upon, or by which any person or property is or may be transported or drawn upon a highway, excepting devices exclusively moved by human power or used exclusively upon stationary rails or tracks" and excepting mobile homes. MCL 257.20; MSA 9.1820 defines a highway or street as "the entire width between the boundary lines of every way publicly maintained when any part thereof is open to the use of the public for purposes of vehicular travel." In this appeal, we must decide if the forklift involved in the accident with William Calladine was a motor vehicle for purposes of MCL 257.401; MSA 9.2101.

Few cases have dealt with the definition of motor vehicle under the owner's liability statute. However, we have often considered the definition of motor vehicle contained in MCL 500.3101; MSA 24.13101 of the Insurance Code. See *Citizens Ins Co of America v Detloff,* 89 Mich App 429; 280 NW2d 555 (1979), lv den 407 Mich 864 (1979); *Ebernickel v State Farm Mutual Automobile Ins Co,* 141 Mich App 729; 367 NW2d 444 (1985), lv den 422 Mich 971 (1985); *Apperson v Citizens Mutual Ins Co,* 130 Mich App 799; 344 NW2d 812

(1983). Those cases are not necessarily dispositive of the issue presented here, however, because that provision states that motor vehicle "means a vehicle, including a trailer, operated or designed for operation upon a public highway by power other than muscular power which has more than 2 wheels" and excepts motorcycles, mopeds, and certain farm equipment. The provisions construed in this appeal are not identical to those found in the Insurance Code.

In *West v Cyril J Burke, Inc,* 137 Mich App 191, 197; 357 NW2d 856 (1984), lv den 422 Mich 852 (1985), we held that the owner's liability statute does not apply unless a vehicle is being driven at the time of the injury. However, that decision did not discuss whether or not a mobile crane is a motor vehicle for purposes of the statute. In this case, it appears that the forklift was being driven when Calladine was injured. We also note that *Ladner v Vander Band,* 376 Mich 321; 136 NW2d 916 (1965), is inapposite. In that case, the Supreme Court held that the owner's liability statute is not restricted to the operation of motor vehicles on public highways, *Ladner, supra,* p 328. That case involved an automobile, however, and the Court did not consider the definition of motor vehicle under the statute. The place where a device is operated may affect the determination of whether or not it is a motor vehicle. See *DAIIE v Spafford,* 76 Mich App 85; 255 NW2d 780 (1977), lv den 402 Mich 825 (1977).

We hold that the forklift which struck plaintiff's ward was not a motor vehicle within the meaning of the owner's liability statute. Where a device is not actually transported or drawn upon a highway and where it cannot lawfully be operated on a highway, it is not a vehicle within the purview of the owner's liability statute. That is the meaning

of the "is or may be" language found in MCL 257.79; MSA 9.1879. This reading of the statute comports with the legislative design to deal primarily with injuries occasioned by automobiles, as set out in *Frazier, supra.*

Since the forklift involved in this case could not lawfully be driven upon a highway, and since it was never driven upon a highway, as defined in MCL 257.20; MSA 9.1820, it was not a motor vehicle as that term is used in the owner's liability statute. See *Ebernickel, supra.* The trial court erred when it refused to grant summary judgment to Dana on plaintiff's claims for negligence based on the owner's liability statute.

Second, Dana argues that the trial court erred when it construed the indemnification language in the equipment lease agreement to include indemnification for products liability claims.

The lease agreement between Modern Handling and Dana provides, in pertinent part:

> Lessee shall indemnify and save Lessor harmless from any and all injury to or loss of the equipment from whatever cause but shall be credited with any amounts received by Lessor from insurance procured by Lessor. *Lessee shall further indemnify and save Lessor harmless from all liability arising out of the use, maintenance, repair and/or delivery of the equipment, including all costs and expenses attributable to claims for loss damage, bodily injury or death, whether or not proven, arising out of such use, maintenance, repair and/or delivery,* but shall be credited with any amounts received by Lessor from insurance procured by Lessee. The amount of damage for injury to or loss of any unit of equipment shall be based on the retail market value of such unit immediately prior to such loss or injury and shall not be reduced because of rentals theretofore paid or accrued. [Emphasis added.]

In *Pritts v J I Case Co,* 108 Mich App 22; 310 NW2d 261 (1981), lv den 413 Mich 909 (1982), we noted:

> An indemnity contract is construed in accordance with the rules for the construction of contracts generally. *Meadows v Depco Equipment Co,* 4 Mich App 370; 144 NW2d 844 (1966). The cardinal rule in the construction of indemnity contracts is to enforce them so as to effectuate the intentions of the parties. *Title Guaranty & Surety Co v Roehm,* 215 Mich 586; 184 NW 414 (1921). Intention is determined by considering not only the language of the contract but also the situation of the parties and the circumstances surrounding the contract. *Id.* Indemnity contracts are construed most strictly against the party who drafts them and against the party who is the indemnitee. *Gartside v Young Men's Christian Ass'n,* 87 Mich App 335; 274 NW2d 58 (1978). *Fireman's Fund American Ins Cos v General Electric Co,* 74 Mich App 318; 253 NW2d 748 (1977). It has also been said of the construction of indemnity contracts that in order to be effective, the terms must be unequivocal. *Hayes v General Motors Corp,* 106 Mich App 188; 308 NW2d 452 (1981). See generally 41 Am Jur 2d, Indemnity, §§ 13-15, pp 697-702. [108 Mich App 29.]

We have held that there cannot be any broader classification than the word all, and that the ordinary and natural meaning of that word, when used in an indemnity agreement, leaves room for no exceptions. See *Pritts, supra,* p 30; *Paquin v Harnischfeger Corp,* 113 Mich App 43, 50; 317 NW2d 279 (1982). The trial court, relying on the use of the term all in the indemnity clause, apparently concluded that the clause would cover products liability claims.

Dana contends that, because the language of the

agreement here is different than that used in *Pritts,* it does not include claims for products liability. According to Dana, products liability claims arise out of the manufacture, rather than the "use, maintenance, repair or delivery" of the equipment. We disagree. Dana's argument is based on semantics rather than substance. We conclude that the use of language referring to "all liability" arising out of the use, maintenance, repair and/or delivery of the equipment covers products liability claims. Thus, the trial court's apparent denial of Dana's motion for summary judgment on the indemnification agreement was correct.

Reversed in part and affirmed in part.