PETERS v GUNNELL, INC

Docket Nos. 230721, 231661. Submitted June 12, 2002, at Detroit. Decided September 27, 2002, at 9:10 A.M.

Nicholas R. Peters brought an action in the Tuscola Circuit Court against Gunnell, Inc., seeking commissions earned as a sales representative for the defendant before his employment contract was terminated. The court, Patrick R. Joslyn, J., entered a judgment and order in favor of the plaintiff, awarding an amount for actual damages and double that amount pursuant to MCL 600.2961(5)(b) for the defendant's intentional failure to pay the commissions. The court also entered a judgment and order in favor of the defendant with regard to the defendant's counterclaim alleging the plaintiff's failure to return equipment samples. The plaintiff then moved for an award of costs and attorney fees and the court granted the motion and entered an opinion and order accordingly. The defendant brought two separate appeals as of right from those orders. The appeals were consolidated.

The Court of Appeals *held*:

1. The evidence supports the award of actual damages as a result of the defendant's failure to pay commissions that, pursuant to MCL 600.2961(4), were to be paid within forty-five days after the date of termination of the parties' sales representative contract.

2. The sales representatives' commissions act, MCL 600.2961, prohibits the withholding of commissions that are due, and contains no provision that a principal may reduce commissions that are due by the amounts of expenses that might later be deemed owed by a sales representative.

3. The court did not err in finding that the defendant intentionally failed to pay the commissions. The act does not provide that the intentional failure to pay must be in bad faith.

4. The court did not clearly err with regard to the amount awarded to the defendant for the equipment samples that were missing.

5. The plaintiff was a prevailing party with regard to the jurisdictional allegations and the claim for past-due commissions. The costs and attorney fees provision of the act, MCL 600.2961(6), refers only to complaints brought by a sales representative under

the act and responses to such complaints. The disposition of the defendant's countercomplaint in favor of the defendant had no bearing on the plaintiff's entitlement to attorney fees and costs as a prevailing party in his action under the act.

6. The act provides for an award of "reasonable" attorney fees. Where the "reasonableness" of the fees is a consideration, the taxation of fees is a judicial, rather than ministerial, task to which administrative time limits do not apply. The twenty-eight-day limit within which to file a motion for costs and attorney fees provided in MCR 2.625(F)(2) did not bar the award of attorney fees and costs in this matter.

Affirmed.

1. SALES — SALES REPRESENTATIVES' COMMISSIONS.

The provision in the sales representatives' commissions act providing for an award of double the amount of actual damages sustained when an employer intentionally fails to pay commissions due does not require that the intentional failure to pay must be in bad faith (MCL 600.2961[5][b]).

2. SALES — SALES REPRESENTATIVES' COMMISSIONS.

A plaintiff in an action under the sales representatives' commissions act must prevail on each and every aspect of the original causes of action under the act and responses to those actions in order to be deemed a prevailing party entitled to reasonable attorney fees and court costs; the disposition of a countercomplaint has no bearing on the plaintiff's entitlement to attorney fees and costs under the act (MCL 600.2961[6]).

3. TRIAL — TAXATION OF FEES — REASONABLE FEES.

The taxation of fees is a judicial, rather than ministerial, task to which administrative time limits do not apply where the reasonableness of the fees is a consideration.

*John Bishop* for Gunnell, Inc.

Before: ZAHRA, P.J., and CAVANAGH and WHITE, JJ.

ZAHRA, P.J. Defendant/counterplaintiff Gunnell, Inc.,[1] brought two appeals as of right from judgments for plaintiff and an order awarding plaintiff attorney fees

---

[1] For ease of reference, Gunnell, Inc., and Nicholas Peters will be referred to as "defendant" and "plaintiff," respectively, throughout this opinion.

and costs. The appeals were consolidated. Defendant challenges the trial court's award of damages to plaintiff under the sales representatives' commissions act (SRCA), MCL 600.2961, the award on defendant's countercomplaint, and the award of fees and costs to plaintiff. We affirm.

## I. FACTS AND PROCEDURE

Defendant manufactures custom wheelchairs and related goods. In July 1996, the parties entered into an Independent Sales Contractor Application and Agreement, whereby plaintiff agreed to serve as a regional sales representative for defendant. The contract provided the following with respect to commissions to be paid to plaintiff:

A. Base Commission:

8% of all total Gunnell units, parts, etc. less shipping rebates, discounts, returns, show equipment, etc. Plus special quarterly bonus commission incentives based on meeting and exceeding quarterly and annual sales quota's [sic].

\*        \*        \*

C.

The independent sales contractor will be paid base commission on a monthly basis, with bonus commissions paid quarterly.

Plaintiff claimed that defendant stopped providing monthly payments to him in late 1996. According to plaintiff, defendant eventually paid past-due commissions in April 1997, but did not pay him for commissions that came due after that date. Records prepared by defendant and introduced below indicate that plaintiff was owed $8,102.26 in commissions in Febru-

ary 1998. Plaintiff claimed he was owed at least that amount in commissions.

Defendant's president, Dwight Gay, admitted that defendant did not pay commissions earned by plaintiff because of cash flow problems. Gay further testified that defendant withheld the $8,102.26 amount due plaintiff because plaintiff failed to sell or return all "show equipment" that was in his possession.[2] Defendant's national sales manager, Cathy Castle, had sent a memo to all sales representatives in December 1996, instructing them to sell or return all old show equipment. Castle specified that fifty percent of the value of all show equipment one year old or older that had not been sold or returned by February 28, 1997, would be deducted from commissions. Castle's memo further stated that she would send representatives monthly statements to help track the equipment. Plaintiff asserted at trial that, notwithstanding this December 1996 memo, it was not the general practice to require the return of equipment at the one-year mark or automatically deduct the value of the equipment from commissions at that time. Plaintiff testified that, notwithstanding the memo, he was not sent monthly statements regarding his inventory of show equipment; that by the time his show equipment was one year old, Castle had left the company;[3] that in his numerous conversations with Gay regarding unpaid commissions, Gay continually identified cash flow problems as the reason the commissions had not

---

[2] The evidence establishes that "show equipment" includes samples of products that defendant provided to sales representatives for demonstration purposes.

[3] There is no evidence that as of February 28, 1997, plaintiff had any show equipment that was one year or more old.

been paid and never mentioned the show equipment; and that the show equipment did not become an issue until this litigation was initiated. Plaintiff offered contemporaneous notations from conversations with Gay to support the contention that Gay at all times cited cash flow problems as the reason for nonpayment. Gay offered no support for his assertion that he asked plaintiff to return show equipment in the summer and fall of 1997.

Gay drafted a letter to plaintiff in January 1998, stating that plaintiff's services were to be terminated effective February 28, 1998. That letter stated, in part: "When your show equipment account is settled, the balance of commissions due will be paid at that time." Plaintiff denied receiving this letter and testified that the first time he saw it was during a deposition. Plaintiff testified that he continued representing defendant through May or June of 1998.

In August 1998, plaintiff filed the instant suit, alleging that defendant breached its sales commission agreement. Defendant filed a countercomplaint, seeking $16,037.60, the alleged value of unaccounted-for show equipment that was loaned to plaintiff.

A bench trial was held, after which the trial court ruled that plaintiff is entitled to $8,102 in commissions, plus $16,204 in statutory damages under the SRCA. The trial court further ruled that defendant is entitled to $1,000 in connection with its claim for missing show equipment. Plaintiff filed a motion for costs and attorney fees. The trial court granted that motion, ordering defendant to pay $7,387.50 in fees and costs. These appeals ensued.

## II. ANALYSIS

### A. ACTUAL DAMAGES UNDER MCL 600.2961(5)(A)

Defendant argues that the trial court erred in awarding $8,102 in commissions under the SRCA. Issues of statutory interpretation are questions of law that we review de novo. *Frank W Lynch & Co v Flex Technologies, Inc*, 463 Mich 578, 583; 624 NW2d 180 (2001); *Oakland Co Bd of Co Rd Comm'rs v Michigan Property & Casualty Guaranty Ass'n*, 456 Mich 590, 610; 575 NW2d 751 (1998). Likewise, the interpretation of a contract is reviewed de novo. *Archambo v Lawyers Title Ins Corp*, 466 Mich 402, 408; 646 NW2d 170 (2002).

The primary goal of judicial interpretation of statutes is to ascertain and give effect to the Legislature's intent. *Frankenmuth Mut Ins Co v Marlette Homes, Inc*, 456 Mich 511, 515; 573 NW2d 611 (1998). If the plain and ordinary meaning of a statute is clear, judicial construction is neither necessary nor permitted. *Walters v Bloomfield Hills Furniture*, 228 Mich App 160, 163; 577 NW2d 206 (1998). We may not speculate regarding the probable intent of the Legislature beyond the words expressed in the statute. *In re Schnell*, 214 Mich App 304, 310; 543 NW2d 11 (1995).

The SRCA provides, in pertinent part:

(4) All commissions that are due at the time of termination of a contract between a sales representative and principal shall be paid within 45 days after the date of termination. Commissions that become due after the termination date shall be paid within 45 days after the date on which the commission became due.

(5) A principal who fails to comply with this section is liable to the sales representative for both of the following:

(a) Actual damages caused by the failure to pay the commissions when due.

(b) If the principal is found to have intentionally failed to pay the commission when due, an amount equal to 2 times the amount of commissions due but not paid as required by this section or $100,000.00, whichever is less.

(6) If a sales representative brings a cause of action pursuant to this section, the court shall award to the prevailing party reasonable attorney fees and court costs. [MCL 600.2961.]

Plaintiff claimed that he was owed at least $8,102.26 in commissions from his sales in 1997. Defendant's records of plaintiff's commissions state that the amount owed to plaintiff through February 1998 was $8,102.26. According to defendant, plaintiff's employment was terminated as of February 28, 1998. There is no evidence that plaintiff received any of the commissions that defendant's own records establish were due him. In fact, Gay admitted that defendant withheld payment of the amount due plaintiff in an attempt to ensure return of defendant's show equipment. Under these circumstances, the evidence establishes that defendant failed to comply with MCL 600.2961(4), which requires payment of commissions that are due within forty-five days after the date of termination of a sales representative contract. Therefore, defendant is liable for actual damages caused by the failure to pay commissions when due. MCL 600.2961(5)(a). The evidence introduced below establishes that plaintiff suffered actual damages in the amount of $8,102.26.[4] We reject defendant's argument

---

[4] Plaintiff claimed at trial that he was owed *at least* $8,102.26 in commissions. However, plaintiff did not introduce any evidence to support a finding that he was due any additional amount of commissions or that he

that the value of unaccounted-for show equipment must be deducted from commissions that were due and owing plaintiff. "Commission" is defined by the SRCA as "compensation accruing to a sales representative for payment by a principal, the rate of which is expressed as a percentage of the amount of orders or sales or as a percentage of the dollar amount of profits." MCL 600.2961(1)(a). As discussed, the SRCA provides that the principal must pay all commissions that are due within forty-five days of termination of a sales representative contract. MCL 600.2961(4). The principal's failure results in liability for actual damages. MCL 600.2961(5)(a). Nothing in the SRCA suggests that it is necessary or proper for a principal to reduce commissions that are due by the amount of expenses that might later be deemed owed by a sales representative. "Nothing may be read into the statute that is not within the manifest intent of the Legislature as gathered from the act itself." *In re Juvenile Commitment Costs*, 240 Mich App 420, 427; 613 NW2d 348 (2000), citing *In re S R*, 229 Mich App 310, 314; 581 NW2d 291 (1998). The "Base Commission" provision of the parties' contract allows show equipment to be deducted when calculating commissions. However, the evidence establishes that defendant did not offset the amount of commissions plaintiff earned by the value of the unaccounted-for show equipment. To the contrary, at different points when plaintiff inquired with defendant regarding commissions owed in 1997, defendant's agent informed plaintiff that defendant was unable to pay commissions because of

---

suffered any greater damage as the result of defendant's failure to pay his commissions when due.

cash flow problems. Defendant's records indicate that plaintiff was owed commissions for the months of May 1997 to February 1998. Defendant admits it later withheld commissions owed plaintiff in an effort to recover costs associated with show equipment.[5] The SRCA plainly prohibits withholding commissions that are due. MCL 600.2961(4).

### B. DAMAGES FOR INTENTIONAL FAILURE TO PAY UNDER MCL 600.2961(5)(B)

Defendant also argues that the trial court erred in awarding plaintiff $16,204 in damages on the basis that defendant intentionally failed to pay plaintiff's commissions. Defendant claims that damages are recoverable under MCL 600.2961(5)(b) only when a principal fails to pay in bad faith. No Michigan case has considered whether recovery under the SRCA is dependant on the existence of bad faith.[6] We find nothing in the SRCA to support defendant's contention that a principal's failure to pay commissions must be in bad faith before the double-damages provision is applied to a delinquent principal.

The SRCA does not mention bad faith or any other mental state of a principal. Defendant claims that the

---

[5] To the extent that the "Base Commission" provision of the parties' contract is ambiguous in regard to the timing of a deduction of show equipment costs, defendant's claim that such costs were to be deducted before any commissions becoming due is inconsistent with the parties' prior practice and the trial court was free to reject defendant's interpretation.

[6] The Michigan Supreme Court has granted leave to consider the standard appropriate to evaluate statutory damages under the SRCA. *In re Certified Question from the United States Court of Appeals for the Sixth Circuit (Kenneth Henes Special Projects v Continental Biomass Indus, Inc)*, 466 Mich 1206 (2002). As of the time of issuance of this opinion, the Supreme Court had not issued an opinion in the matter.

requirement of bad faith is presumed from the requirement that an employer "intentionally" fail to pay commissions. MCL 600.2961(5)(b). The term "intentionally" is not defined in the statute. Thus, it is appropriate to consult dictionary definitions to determine the meaning of the term. *Popma v Auto Club Ins Ass'n*, 446 Mich 460, 470; 521 NW2d 831 (1994). Black's Law Dictionary (7th ed) defines "intentional" as "[d]one with the aim of carrying out the act." Similarly, *Random House Webster's College Dictionary* (2000) defines "intentional" as "done with intention or on purpose; intended."[7] Nothing in these definitions leads to the inference that recovery under MCL 600.2961(5)(b) is dependent on a principal failing to pay in bad faith.[8] See, generally, Gillary & Albus, *Michigan's sales representative act revisited— again—or, does "intentionally" mean "in bad faith"?*, 2001 MSU-DCL L R 965.

Gay testified that plaintiff was owed commissions, but defendant did not pay plaintiff as a result of cash flow problems and later withheld payment as a means of ensuring the return of show equipment. The letter terminating plaintiff's employment supports the finding that defendant withheld commissions due plaintiff in an effort to force plaintiff to return or account for all show equipment. This evidence makes clear that defendant's failure to pay the commissions due plain-

---

[7] "Intention" is defined as "an act or instance of determining mentally upon some action or result," and "the end or object intended; purpose." *Random House Webster's College Dictionary* (2000).

[8] Defendant cites the definition found in Black's Law Dictionary (4th ed), which defines "intentional" as "[w]illful." Even if the term "intentionally" is considered in the context of wilfulness, it does not lead to the conclusion that bad faith is included in the meaning of the term. A thing may be done wilfully without bad faith.

tiff was not accidental or unintended. Under these circumstances, where the evidence establishes that defendant intentionally failed to pay plaintiff's commissions when due, MCL 600.2961(5)(b) provides that plaintiff is entitled to $16,204.52, two times the amount of commissions due under MCL 600.2961(5)(a).[9]

### C. VALUE OF SHOW EQUIPMENT

Defendant also argues that the trial court erred in determining that defendant was entitled to only $1,000 for unaccounted-for show equipment. We will not set aside a trial court's factual findings absent clear error. MCR 2.613(C). Clear error is found only when on review of the entire record, the reviewing court is left with the definite and firm conviction that a mistake has been made. *Walters v Snyder*, 239 Mich

---

[9] Defendant may argue that it is unfair to hold defendant to the double-damages provision of the SRCA where there exists factual questions regarding contractual setoffs. As stated, the trial court was free to reject defendant's argument that the show equipment costs were to be deducted before calculating commissions due because defendant's argument is inconsistent with the parties' prior practices. Whether the SRCA is "fair" in its application is not a matter of judicial concern where, as here, the legislative mandates are clear. Moreover, the SRCA reflects a legislative policy choice that courts cannot second-guess. By including the double-damages provision in the SRCA, the Legislature intended for principals to quickly and equitably settle all accounts of terminated sales representatives. A principal who fails to resolve its accounts or who settles them erroneously does so at the peril of the double-damages provision of the SRCA. We further reject defendant's argument that a trial court has discretion not to award statutory damages under the SRCA. Nothing in the plain language of the statute supports this contention. The statute provides that the principal who fails to pay commissions "is liable" to the sales representative. MCL 600.2961(5). There is nothing ambiguous about the language of that subsection, and we will not construe the provision as having greater meaning than what may be gathered from the language of the act itself. *In re Juvenile Commitment Costs, supra; Walters v Bloomfield Hills Furniture, supra.*

App 453, 456; 608 NW2d 97 (2000). Defendant's countercomplaint sought $16,037.60 in connection with the show equipment; however, defendant's December 31, 1997, list of "Representative Show Equipment" suggests that defendant considered only $4,000 worth of equipment to be missing. There was testimony that much of the equipment deemed missing was eventually returned to defendant. Plaintiff claimed that only accessories without substantial value were missing. The Castle memo documents that the equipment loaned to plaintiff was to be discounted fifty percent. Under these circumstances, where the evidence supported the findings that much of the show equipment was returned to defendant and the remaining equipment had a significantly reduced value, we cannot say that the trial court clearly erred in valuing the show equipment at $1,000. *Walters v Snyder, supra.*

### D. FEES AND COSTS

Defendant further argues that the trial court erred in awarding plaintiff attorney fees and costs. Defendant claims that plaintiff was not entitled to fees under MCL 600.2961(6) because he was not the "prevailing party." Alternatively, defendant claims that the trial court erred in ordering fees because plaintiff failed to move for costs within the time specified in MCR 2.625(F)(2).

#### 1. FEES TO A PREVAILING PARTY UNDER MCL 600.2961(6)

The SRCA requires the court to award reasonable attorney fees and court costs to the prevailing party in a suit. MCL 600.2961(6). "Prevailing party" is defined in the SRCA as "a party who wins on all the

allegations of the complaint or on all of the responses to the complaint." MCL 600.2961(1)(c). Defendant claims that plaintiff cannot be said to have prevailed in this case because the trial court awarded defendant a judgment on its countercomplaint and plaintiff alleged damages in excess of $25,000, but was found to have suffered actual damages in the amount of only $8,102.

Preliminarily, we observe that the Legislature chose to severely limit the instances where reasonable attorney fees and costs are awarded, as indicated by the requirement that a prevailing party win "on *all* the allegations of the complaint or on all of the responses to the complaint." MCL 600.2961(1)(c) (emphasis added). As observed by this Court in *Romska v Opper*, 234 Mich App 512; 594 NW2d 853 (1999), " '[t]here cannot be any broader classification than the word "all," and "all" leaves room for no exceptions.' " *Id.* at 515-516, quoting *Calladine v Hyster Co*, 155 Mich App 175, 182; 399 NW2d 404 (1986). Thus, a party cannot be deemed a prevailing party entitled to reasonable attorney fees and court costs unless that party is found to have prevailed fully on each and every aspect of the claim or defense asserted under the SRCA.

We nonetheless reject defendant's argument that plaintiff cannot, as a matter of law, be said to have prevailed because his complaint sought damages in excess of $25,000, and the amount of actual damages awarded by the trial court was only $8,102.26. Contrary to defendant's argument, plaintiff never alleged in his complaint actual damages in excess of $25,000. Rather, plaintiff merely alleged under the jurisdictional allegations of the complaint that the amount in

controversy exceeded $25,000. Also, plaintiff's prayer for relief sought an amount in excess of $25,000, and specifically requested that the amount be awarded pursuant to the SRCA's provisions for actual damages, double damages, and reasonable attorney fees and costs. The fact that plaintiff is entitled to $8,102.26 in actual damages is not dispositive of whether he prevailed on all aspects of his claim to the extent that he is entitled to an award of attorney fees and costs under MCL 600.2961(6). Plaintiff merely alleged that he was owed past-due commissions and that the amount in controversy exceeded $25,000. When considering all the statutory grounds for relief under the SRCA, we conclude that plaintiff prevailed on his jurisdictional allegation as well as on his claim for past-due commissions.[10]

In regard to defendant's argument that the award of attorney fees was improper because defendant received a judgment on its countercomplaint, the SRCA makes no mention of countercomplaints. Rather, the subsection involving attorney fees and costs refers only to complaints brought by a sales representative under the act and responses to such complaints. MCL

---

[10] Plaintiff received a total award of $31,693.78 under the statute; $24,306.28 in actual and double damages and $7,387.50 in attorney fees and costs pursuant to the SRCA. Jurisdictional allegations are not viewed in hindsight. Whether a jurisdictional allegation is satisfied is not determined by viewing the final proofs, but rather the party's good-faith allegations at the time the complaint is filed. In this case, plaintiff claimed he was due at least $8,102.26 in actual damages and possibly more. Plaintiff also claimed statutory double damages and, thus, appropriately alleged an amount in controversy in excess of $25,000. Additionally, while costs and attorney fees generally are not considered part of an amount in controversy, the statute at issue expressly provides for attorney fees and costs. Plaintiff sought attorney fees as part of his claim under the SRCA. The SRCA not only provides for attorney fees and costs, but also requires that fees and costs be awarded to a prevailing party.

600.2961(6). A response to a complaint relates directly to a plaintiff's cause of action, whereas a countercomplaint involves allegations wholly separate from the original plaintiff's action. Because the attorney fees provision of the SRCA relates only to prevailing parties on original causes of action under the SRCA and responses to those actions, we conclude that the disposition of defendant's countercomplaint has no bearing on plaintiff's entitlement to attorney fees and costs under the SRCA.

### 2. FEES AWARDED OUTSIDE THE TWENTY-EIGHT-DAY PERIOD EXPRESSED IN MCR 2.625(F)(2)

Finally, we reject defendant's argument that fees and costs cannot be awarded to plaintiff because plaintiff filed his motion for fees and costs outside the time limit expressed in MCR 2.625(F)(2).[11] The interpretation and application of court rules presents a question of law that we review de novo. *Reitmeyer v Schultz Equip & Parts Co, Inc*, 237 Mich App 332, 336; 602 NW2d 596 (1999).

---

[11] That subrule provides:

When costs are to be taxed by the clerk, the party entitled to costs must present to the clerk, within 28 days after the judgment is signed, or within 28 days after entry of an order denying a motion for new trial, a motion to set aside the judgment, or a motion for other postjudgment relief except a motion under MCR 2.612(C),

(a) a bill of costs conforming to subrule (G),

(b) a copy of the bill of costs for each other party, and

(c) a list of the names and addresses of the attorneys for each party or of parties not represented by attorneys.

In addition, the party presenting the bill of costs shall immediately serve a copy of the bill and any accompanying affidavits on the other parties. Failure to present a bill of costs within the time prescribed constitutes a waiver of the right to costs.

The SRCA specifies that "reasonable" attorney fees and court costs shall be awarded. MCL 600.2961(6). Therefore, determination of the amount of fees and costs requires submission to the trial court. See *Giannetti Bros Constr Co, Inc v Pontiac*, 152 Mich App 648, 655; 394 NW2d 59 (1986). Where the "reasonableness" of fees is a consideration, the taxation of fees is a judicial, rather than ministerial, task and administrative time limits do not apply. *Cope v St Clair*, 28 Mich App 380, 382; 184 NW2d 464 (1970); see *Dresselhouse v Chrysler Corp*, 177 Mich App 470, 480-482; 442 NW2d 705 (1989), and *Fairway Enterprises, Inc v Na-Churs Plant Food Co*, 163 Mich App 497, 499; 415 NW2d 257 (1987).[12] Accordingly, the twenty-eight-day limit in MCR 2.625(F)(2) does not bar the award of fees and costs to plaintiff.

III. CONCLUSION

Plaintiff is entitled to $8,102.26 in actual damages, MCL 600.2961(5)(a), plus $16,204.52 resulting from defendant's intentional failure to pay commissions due, MCL 600.2961(5)(b). The trial court did not clearly err in finding that the value of the show equipment subject to defendant's countercomplaint was $1,000. The fees and costs awarded to plaintiff under MCL 600.2961(6) were proper.

Affirmed.

---

[12] Moreover, this case does not involve the situation where costs were to be taxed by the court clerk. See MCR 2.625(F)(2). Plaintiff submitted his motion for fees and costs to the trial court thirty-nine days after entry of the judgment on plaintiff's complaint. We note that defendant does not argue that the length of plaintiff's delay in bringing his motion was unreasonable. Cf. *Giannetti Bros, supra* at 656; *Fairway Enterprises, supra* at 499.