*If this opinion indicates that it is "FOR PUBLICATION," it is subject to
revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

PARAGON 28 INC.,

      Plaintiff/Counterdefendant-
Appellee/Cross-Appellant,

v

JON BUCK and PATRIOT MEDICALS LLC,

      Defendants/Counterplaintiffs-
Appellants/Cross-Appellees.

UNPUBLISHED
June 12, 2026
12:23 PM

No. 370851
Wayne Circuit Court
LC No. 21-016518-CB

Before: BAZZI, P.J., and RICK and MALDONADO, JJ.

PER CURIAM.

In this breach-of-contract action involving the sale of medical products, defendants/counterplaintiffs-appellants/cross-appellees, Patriot Medicals LLC and Jon Buck, the president of Patriot Medicals, appeal as of right, and plaintiff/counterdefendant-appellee/cross-appellant, Paragon 28, Inc. (sometimes referred to as P28), cross-appeals as of right, the trial court's judgment awarding Patriot Medicals $4,024.83 in unpaid commission. Defendants also challenge the order denying a motion for entry of judgment. Plaintiff challenges the trial court's findings of fact, conclusions of law, and judgment. We vacate the trial court's judgment and remand.

## I. BACKGROUND

This matter stems from defendants' sale and promotion of plaintiff's medical products as independent commissioned sales agents (sales agents). Plaintiff manufactures and sells medical products used in ankle and foot surgeries. To promote and sell its products, plaintiff hires sales agents, offering higher commission rates to those who exclusively sell plaintiff's products. To that end, the parties entered into a sales agent agreement from October 15, 2018 through December 31, 2018, under which defendants were authorized to sell and promote plaintiff's products. The agreement expressly prohibited defendants from carrying products made by other companies. Except for a few products identified within the agreement, defendants were not to "carry any other non-P28 products" anywhere. Under the terms of the agreement, a breach of the exclusivity

-1-

provision would lower the sales agent's commission rate on each item sold on and after the date of the breach by 10%.

The parties entered into a second sales agent agreement from January 1, 2019 until December 31, 2019, with the same exclusivity provision as the 2018 agreement. However, in June 2019, John Shumaker, plaintiff's then vice president of sales for the eastern United States, discovered from a regional sales manager, Brian Hill, that Buck was selling products from Integra LifeSciences—a company that manufactures products for soft tissue reconstruction. Buck repeatedly denied this allegation.

The parties then entered a third sales agent agreement in 2020 and a fourth and final sales agent agreement in 2021. Each of these agreements continued to prohibit the sales agent, including all of its representatives and employees, from carrying any non-P28 products. The agreements also continued to impose a 10% rate reduction for breaching this exclusivity provision.

Defendants' sales of plaintiff's products was approximately $40,000 in 2018; $800,000 in 2019; $1.7 million in 2020; and $1.3 million through July 2021 (with an expected total of $3.2 million for 2021). Defendants also received the additional 10% premium commission for exclusively carrying plaintiff's products. However, Shumaker continued to believe that Buck "was selling product outside of what he should be." Indeed, Buck later testified that he was selling Integra products through Coastline Medicals, a separate company that he owned.[1] According to Buck, Brandon Strange, plaintiff's regional sales manager for the east and northeast, suggested this arrangement as a way for Buck to sell Integra products without violating the sales agent agreements. Buck also stated that Strange's successor, Matthew Papagno, continued to allow the practice. Strange and Papagno both denied suggesting how Buck could carry Integra products, averring that they were unaware of Coastline. In August 2021, plaintiff terminated the 2021 agreement on the basis that defendants carried the Integra product line from "at least June 25, 2019 through August 24, 2021."

Plaintiff filed a complaint for breach of contract, alleging that defendants impermissibly and covertly sold the medical products of other companies, namely Integra, to earn a higher commission rate. Plaintiff further alleged that the breach of the sales agent agreements necessitated a retroactive reduction of defendants' commission rates by 10%. Defendants filed a counterclaim, alleging that plaintiff wrongfully terminated the 2021 agreement and failed to pay commissions that would have been earned through the termination of the 2021 agreement. Defendants also alleged a violation of the Michigan Sales Representative Commissions Act (SRCA), MCL 600.2961, allowing the recovery of additional statutory damages and attorney fees.

Plaintiff moved for summary disposition under MCR 2.116(C)(10), arguing there was no genuine issue of material fact and requesting the entry of judgment of $417,609.86 to recoup defendants' allegedly unearned commissions and unreturned inventory. The trial court granted summary disposition to plaintiff regarding liability after noting that Buck signed the 2021

_____

[1] Buck averred that his wife owned Coastline but also testified at the bench trial on damages that he owned the company.

agreement "[p]ersonally and individually." The trial court explained that "the written contract is clear that Buck and his company can't carry Integra," but "there really isn't any doubt" that Buck sold Integra through Coastline, a company that he undisputedly "had an interest in."

A bench trial was held on damages, during which the trial court confirmed that the issue of liability was already settled in plaintiff's favor. Subsequently, the trial court issued its findings of fact, conclusions of law, and judgment. The trial court determined that plaintiff did "not have admissible evidence that Patriot Medicals breached the Agreement on any particular date, or at all, or that Patriot Medicals caused [p]laintiff to suffer any actual damages." The trial court thus determined that there was "no evidence" justifying plaintiff's early termination of the 2021 agreement.

The trial court also determined that "non-P28 products," as stated within the exclusivity provision, "cannot be read literally." Instead, the trial court determined that the phrase "must be interpreted in the context of the relationship between the parties." On this point, the trial court found instructive a noncompete restriction preventing defendants from selling products that were competitive with plaintiff's products for one year after termination. The trial court determined that the noncompete provision made clear that there was no "absolute bar on selling *all* medical products[.]" Therefore, even if defendants sold Integra products, they were not competitive with plaintiff's products.

The trial court further determined that the exclusivity provision was "a liquidated damages clause that constituted an unenforceable penalty." Regarding defendants' counterclaim for plaintiff's breach of the agreement, the trial court found that defendants were entitled to a credit for unpaid August 2021 commissions, less amounts paid by plaintiff to defendants' four sales representatives, or $4,024.84. Defendants moved for entry of judgment, again requesting statutory damages and attorney fees under the SRCA. The trial court denied defendants' motion for entry of judgment and denied the request for statutory damages and attorney fees. The trial court also determined that defendants were not entitled to statutory damages because plaintiff's failure to pay was not intentional and that defendants were not entitled to attorney fees because they were not the prevailing party. Finally, the trial court entered judgment "against [plaintiff] in the amount of $4,024.83." These cross-appeals followed.

## II. INTERPRETATION OF THE 2021 AGREEMENT

### A. UNAMBIGUOUS EXCLUSIVITY PROVISION

Plaintiff contends the 2021 agreement contained an unambiguous exclusivity provision, and the trial court erred by not enforcing the provision as written. We agree.

"This Court reviews de novo issues of contractual interpretation. If the contractual language is unambiguous, courts must interpret and enforce the contract as written, because an unambiguous contract reflects the parties' intent as a matter of law." *Tripp v Baker*, 346 Mich App 257, 272-273; 12 NW3d 45 (2023) (quotation marks and citations omitted).

> The main goal of contract interpretation generally is to enforce the parties'
> intent. But when the language of a document is clear and unambiguous,

-3-

interpretation is limited to the actual words used, and parol evidence is inadmissible to prove a different intent[.] An unambiguous contract must be enforced according to its terms. The judiciary may not rewrite contracts on the basis of discerned reasonable expectations of the parties because to do so is contrary to the bedrock principle of American contract law that parties are free to contract as they see fit, and the courts are to enforce the agreement as written absent some highly unusual circumstance, such as a contract in violation of law or public policy. [*Burkhardt v Bailey*, 260 Mich App 636, 656-657; 680 NW2d 453 (2004) (quotation marks and citations omitted).]

"When a court abrogates unambiguous contractual provisions based on its own independent assessment of 'reasonableness,' the court undermines the parties' freedom of contract." *Rory v Continental Ins Co*, 473 Mich 457, 468-469; 703 NW2d 23 (2005).

In this case, the trial court erred when it substituted its own interpretation for the unambiguous phrase, "non-P28 products," as used in paragraph 5 of the 2021 agreement.[2] Paragraph 5 of the 2021 agreement instructs that defendants "identif[y] on exhibit C all non-P28 products which it intends to carry." In turn, exhibit C lists no products from other companies. The remainder of paragraph 5 delineates the crux of the exclusivity arrangement as follows:

Sales Agent, including all of its representatives and employees, shall not carry *any other non-P28 products* either in the Territory or outside of the Territory. The commission rates set forth in this Agreement include a premium often percent of Net Invoice Price in compensation for such exclusivity. Breach shall result in a return of such premium commissions from the date of breach, may be considered conversion of commissions under Michigan law, and may result in early termination of this Agreement. [emphasis added.]

The trial court determined there was "no ambiguity" in the 2021 agreement yet concluded that the phrase "non-P28 products" used in paragraph 5 "cannot be read literally" and "must be interpreted in the context of the relationship between the parties." To that end, the trial court relied on the testimonies of Shumaker and Buck at the bench trial on damages to conclude that plaintiff's intent in drafting the 2021 agreement was for defendants "to refrain from undermining [p]laintiff's sales by selling competitive products."

We conclude that paragraph 5 in the 2021 agreement expressly included exhibit C, which is where defendants (as they did in the preceding three sales agent agreements), were to enumerate "non-P28 products which it intends to carry during the Term." Paragraph 5 did not limit the phrase "non-P28 products" in any way to justify the trial court's interpretation that plaintiff only wished for defendants to list products that were *competitive* with plaintiff's products. Rather, defendants were expressly forbidden from carrying "*any* other non-P28 products" anywhere (emphasis

---

[2] This same phrase was used in either paragraph 4 or paragraph 5 of each of the three prior sales agent agreements.

added).  Accordingly, the trial court erred by reading this provision as ambiguous and requiring additional context.  See *Burkhardt*, 260 Mich App at 656-657.

The trial court further erred by referring to a separate provision of the 2021 agreement, the noncompete provision in paragraph 33, to help "understand the context" of the phrase.  Paragraph 33 contained a separate and unrelated noncompete restriction.  In particular, paragraph 33 disallowed defendants, for one year after termination, from "solicitation of sales, provid[ing] technical assistance, or provid[ing] support for any products that [plaintiff] deems may be directly or indirectly competitive with [plaintiff's] products, other than those identified on exhibit C. . . ."  The trial court determined that neither paragraph 5 nor paragraph 33 "could be an absolute bar on selling ***all*** medical products," noting that defendants could theoretically "sell pacemakers."  In this way, the trial court erroneously failed to enforce the 2021 agreement as written, see *id*., and we vacate these conclusions within the trial court's order.

Applying the language as written, we conclude that defendants breached the 2021 agreement by selling Integra products through Coastline.  On this point, we agree with the analysis that the trial court undertook when it granted summary disposition to plaintiff regarding liability at the conclusion of the motion hearing on August 8, 2023.[3]

The exclusivity provision of the 2021 agreement prohibits the "Sales Agent, including all of its representatives and employees," from "carrying" "any other non-P28 products either in the Territory or outside of the Territory."  By definition, both Patriot Medical and Buck were included in the term "Sales Agent."[4]  The trial court noted that Buck signed the sales agent agreements "[p]ersonally and individually," as well as on behalf of Patriot Medicals.  We agree with the trial court that "Buck clearly was a part of the contract," and "the written contract is clear that Buck and his company can't carry Integra."

The sales agreement does not define the term "carry."  In such a case, it is appropriate to consult a dictionary to ascertain the plain meaning of an undefined term.  *People v Warren*, 505 Mich 196, 208; 949 NW2d 125 (2020).  According to *Merriam Webster's Collegiate Dictionary*, "carry" is a versatile word with over a dozen definitions, depending on context.  In a sales context, "carry" means "to stock for sale" or "to keep (something) in stock for sale."  *Merriam-Webster's*

---

[3] To the extent that the trial court's findings of fact and conclusions of law after the bench trial on damages conflict with the trial court's order granting plaintiff summary disposition on the issue of liability, we note that "an order or other form of decision adjudicating fewer than all the claims, or the rights and liabilities of fewer than all the parties . . . is subject to revision before entry of final judgment . . . ."  MCR 2.604(A); see also *Prentis Family Foundation, Inc v Karmanos Cancer Institute*, 266 Mich App 39, 52-53; 698 NW2d 900 (2005) ("[A] trial court has unrestricted discretion to review its previous decision[.]" (citations omitted)).

[4] Buck could also arguably be considered both a representative and an employee of Patriot Medical, though it is not necessary for us to make such a determination because under any reading of the agreement, it applied to him personally.

*Collegiate Dictionary* (12th ed). "Stock," in turn, means "to procure or keep a stock of." *Merriam-Webster's Collegiate Dictionary* (12th ed).

As the trial court correctly noted, "there really isn't any doubt" that Buck sold Integra through Coastline. During the bench trial on damages, Buck admitted that he established Coastline and that he began selling Integra through Coastline on or about December 2018, about the same time that Patriot Medicals dropped the Integra line. Buck further testified that he hired other Coastline sales agents who sold (or attempted to sell) Integra products. In addition to Buck's own testimony at the bench trial, plaintiff presented evidence at the motion hearing that Buck was selling Integra, including Buck's text exchanges with an Integra sales agent, Integra commission statements to Buck's sales agent, and evidence that Buck attended a seminar on Integra products. This evidence supports that Buck was procuring Integra products for sale, or "carrying" Integra products, albeit through Coastline. The plain language of the sales agreement does not limit the exclusivity provision to Buck's role as a sales agent of Patriot Medical. As noted, by its express terms, the agreement also applies to Buck personally, and he admits that he signed it to that effect. Therefore, Buck breached the exclusivity provision of the agreement as it was written by selling Integra through another of his companies. Accordingly, plaintiff was entitled to terminate the August 2021 agreement.

## B. COMMISSION REDUCTION PROVISION

Plaintiff also argues on appeal that the trial court erred by denying its request to recover unearned commissions on the basis that the commission-reduction aspect of the exclusivity provision was a liquidated damages clause that was an unenforceable penalty. We agree.

"In civil cases, Michigan follows the raise or waive rule of appellate review. Under that rule, litigants must preserve an issue for appellate review." *Tolas Oil & Gas Exploration Co v Bach Servs & Mfg, LLC*, 347 Mich App 280, 289; 14 NW3d 472 (2023) (quotation marks and citation omitted). "However, this Court may overlook preservation requirements if the failure to consider the issue would result in manifest injustice, if consideration is necessary for a proper determination of the case, or if the issue involves a question of law and the facts necessary for its resolution have been presented." *Id*. at 289-290 (quotation marks and citations omitted).

Plaintiff consistently argued in the trial court that this commission-reduction provision is enforceable and should be interpreted as written. To the extent that plaintiff frames this argument as seeking reliance damages, this framing is raised for the first time on appeal. However, in light of our prior assignment of error regarding the trial court's interpretation of the exclusivity provision, we exercise our discretion to overlook the preservation requirement to prevent manifest injustice. See *id*.

"In an action based on contract, the parties are entitled to the benefit of the bargain as set forth in the agreement." *Ferguson v Pioneer State Mut Ins Co*, 273 Mich App 47, 54; 731 NW2d 94 (2006). Liquidated damages provisions fix the amount owed when a party breaches the contract, serving as pre-estimated compensation for harm. See *UAW-GM Human Resource Ctr v KSL Recreation Corp*, 228 Mich App 486, 508; 579 NW2d 411 (1998). A liquidated damages provision is appropriate when "actual damages are uncertain and difficult to ascertain or are of a purely speculative nature." *St Clair Med, PC v Borgiel*, 270 Mich App 260, 271; 715 NW2d 914

(2006) (quotation marks, citation, and ellipses omitted). Such a provision is "enforceable if the amount is reasonable with relation to the possible injury suffered and not unconscionable or excessive." *Id*. at 270-271.

Nevertheless, even when the parties have agreed to a certain sum as liquidated damages, the provision can be invalidated if it is, in fact, a penalty for the contract breaker. *Moore v St Clair Co*, 120 Mich App 335, 339-341; 328 NW2d 47 (1982). "The distinction between a valid liquidated damages clause and an illegal penalty depends on the relationship between the amount stipulated to in the liquidated damages clause and the subject matter of the cause of action." *Papo v Aglo Restaurants of San Jose, Inc*, 149 Mich App 285, 294; 386 NW2d 177 (1986). Whether such a provision is valid and enforceable or invalid as a penalty is a question of law. *Moore*, 120 Mich App at 339.

In this case, each of the four sales agent agreements between the parties contained the same exclusivity provision. In particular, the parties agreed that defendants would not carry any nonplaintiff products. The parties further agreed that "in compensation for such exclusivity," the "commission rates include a premium of ten percent of Net Invoice Price."[5] Finally, the parties agreed that a breach of this exclusivity provision "shall result in a return of such premium commissions from the date of breach."

We conclude that this arrangement is not "a liquidated damages clause that constitutes an unenforceable penalty under Michigan law," as the trial court characterized it. The 10% commission premium for exclusivity—and corresponding claw back for non-exclusivity—was not a pre-estimated compensation for harm. See *UAW-GM Human Resource Ctr*, 228 Mich App at 508. That is, the bonus-for-exclusivity provision does not compensate for breach—it defines the terms under which additional compensation is earned. The "penalty" for non-exclusivity is simply the forfeiture of the bonus payment, not an additional sum imposed as punishment. The parties are entitled to the benefit of the bargain as set forth in the agreement. See *Ferguson*, 273 Mich App at 54. Plaintiff did not get the benefit of the bargain when defendants obtained a commission for exclusivity that it did not earn.

Therefore, the trial court erred by interpreting the commission-reduction provision as an unenforceable penalty. Accordingly, plaintiff is entitled to recoup the unearned commissions that it paid to defendants from the date of the first breach.

### III.  DEFENDANTS' CLAIMS FOR DAMAGES AND ATTORNEY FEES

#### A.  COMMISSION-RELATED DAMAGES

Defendants assert that the trial court erred in its calculation of damages regarding their counterclaims by not awarding commissions for sales made in August 2021 before the termination date, as well as for projected sales through the remainder of the 2021 agreement. We disagree.

---

[5] The agreement defined "Net Invoice Price" as the customer's invoice price less potential rebates and actual returns.

"A trial court's factual findings are reviewed for clear error. A finding is clearly erroneous when, although there is evidence to support it, the reviewing court on the entire record is left with a definite and firm conviction that a mistake was made." *Zoran v Cottrellville Twp*, 322 Mich App 470, 475; 913 NW2d 359 (2017) (quotation marks and citations omitted). "As with other findings of fact, an award of damages is reviewed on appeal pursuant to the clearly erroneous standard." *Jackson v Bulk AG Innovations, LLC*, 342 Mich App 19, 24; 993 NW2d 11 (2022) (quotation marks and citation omitted).

In this case, the 2021 agreement provided that monthly commissions would be reduced by 5% when defendants failed to meet their monthly quota. The agreement further stated, in relevant part:

> Upon termination of this Agreement or reduction in Territory, Sales Agent shall earn commissions on orders placed through Sales Agent in the Territory prior to such termination or Territory reduction *but only* if P28 receives a purchase order by the end of the month following termination or Territory reduction *and* after P28 receives payment. [Emphasis added.]

Pursuant to this provision, the trial court determined that defendants are "entitled to a credit for unpaid August 2021 commissions less amounts paid by [p]laintiff to [d]efendants' four sales representatives," which was $4,024.84.

This was the amount established by Vanderkam's testimony. According to Vanderkam, this amount reflects defendants' commissions through the termination of the 2021 agreement for which plaintiff had received a purchase order, reduced by 5% because defendants did not meet their quota for that month and by the 10% premium that defendants lost for breaching the exclusivity provision.

In light of our conclusion that plaintiff was entitled to terminate the 2021 agreement in August 2021 on the basis of defendants' breach of the exclusivity provision, we are not definitely and firmly convinced that this award is erroneous. See *Zoran*, 322 Mich App at 475.

## B. DEFENDANTS' CLAIM FOR STATUTORY DAMAGES AND ATTORNEY FEES

Defendants further assert that the trial court erred in its calculation of damages regarding their counterclaims by not awarding statutory damages and attorney fees under the SRCA. We agree.

"Statutory interpretation is a question of law, which this Court reviews de novo." *O'Neal v St John Hosp & Med Ctr*, 487 Mich 485, 493; 791 NW2d 853 (2010).

> When interpreting the meaning of a statute, [this Court's] primary goal is to discern the intent of the Legislature by first examining the plain language of the statute. Statutory provisions must be read in the context of the entire act, giving every word its plain and ordinary meaning. When the language is clear and unambiguous, [this Court] will apply the statute as written and judicial construction is not permitted.

[*Driver v Naini*, 490 Mich 239, 246-247; 802 NW2d 311 (2011) (citations omitted).]

"Courts must give effect to every word, phrase, and clause in a statute, and must avoid an interpretation that would render any part of the statute surplusage or nugatory." *Koontz v Ameritech Servs, Inc*, 466 Mich 304, 312; 645 NW2d 34 (2002). This Court "review[s] for an abuse of discretion a trial court's award of attorney fees and costs." *Smith v Khouri*, 481 Mich 519, 526; 751 NW2d 472 (2008). "An abuse of discretion occurs when the trial court's decision is outside the range of reasonable and principled outcomes." *Id*. Likewise, "[w]hen a trial court exercises its discretion under a mistake of law, it necessarily abuses its discretion." *Tolas*, 347 Mich App at 301.

The SRCA governs actions for unpaid sales commissions, stating in relevant part:

(4) All commissions that are due at the time of termination of a contract between a sales representative and principal shall be paid within 45 days after the date of termination. Commissions that become due after the termination date shall be paid within 45 days after the date on which the commission became due.

(5) A principal who fails to comply with this section is liable to the sales representative for both of the following:

(a) Actual damages caused by the failure to pay the commissions when due.

(b) If the principal is found to have *intentionally failed to pay the commission when due*, an amount equal to 2 times the amount of commissions due but not paid as required by this section or $100,000.00, whichever is less. [MCL 600.2961 (emphasis added).]

Our Supreme Court has read that provision to mean that "if a principal deliberately fails to pay a commission when due, it is liable for [the penalty] under the statute, even if the principal did not believe, reasonably or otherwise, that the commission was owed." *In re Certified Question*, 468 Mich 109, 114; 659 NW2d 597 (2003). "Nothing in the SRCA suggests that it is necessary or proper for a principal to reduce commissions that are due by the amount of expenses that might later be deemed owed by a sales representative." *Peters v Gunnell, Inc*, 253 Mich App 211, 218; 655 NW2d 582 (2002). Further, a showing of bad faith is not required when determining damages for the intentional failure to pay under MCL 600.2961(5)(b). See *id*. at 219. Rather, "[u]nder the language of the statute, it appears that the only cognizable defense to a double-damages claim is if the failure to pay the commission were based on inadvertence or oversight." *In re Certified Question*, 468 Mich at 118.

In this case, plaintiff did not allege inadvertence or oversight. Nevertheless, the trial court stated that plaintiff did not act with "intentionality or bad faith." The trial court agreed that statutory damages were unwarranted because defendants concealed their carrying of nonplaintiff products, and it "would be unreasonable to hold that [plaintiff] intentionally failed to pay commissions which were not due under the terms of the parties' contract."

-9-

We agree that plaintiff alleged a valid breach-of-contract action against defendants. Further, plaintiff paid certain sales agents of defendants for what it believed was the proper amount of commissions owed. However, plaintiff still was *not* entitled to withhold the remaining amount of the earned commissions owed directly to defendants. See *In re Certified Question*, 468 Mich at 118. Accordingly, the trial court abused its discretion when it determined that defendants were not entitled to statutory damages under the SRCA. See *Tolas*, 347 Mich App at 301.

We further conclude that the trial court erred by denying defendants' request for attorney fees under the SRCA. MCL 600.2961 states in relevant part:

> (1) As used in this section:
>
> * * *
>
> (c) "Prevailing party" means a party who wins on all the allegations of the complaint or on all of the responses to the complaint.
>
> * * *
>
> (6) If a sales representative brings a cause of action pursuant to this section, the court shall award to the prevailing party reasonable attorney fees and court costs.

"Thus, a party cannot be deemed a prevailing party entitled to reasonable attorney fees and court costs unless that party is found to have prevailed fully on each and every aspect of the claim or defense asserted under the SRCA." *Peters*, 253 Mich App at 223. Notably, "the SRCA makes no mention of countercomplaints." *Id*. at 224. "Rather, the subsection involving attorney fees and costs refers only to complaints brought by a sales representative under the act and responses to such complaints." *Id*. Therefore, the disposition of a countercomplaint "has no bearing on [a party's] entitlement to attorney fees and costs under the SRCA." *Id*. at 225.

In the present case, as discussed, plaintiff did not wrongfully terminate the 2021 sales agent agreement. Consequently, defendants did not prevail on their counterclaim for breach of contract against plaintiff, nor did defendants prevail on their claim seeking commissions that would have been earned through December 2021. However, defendants' claim under the SCRA alleges only that plaintiff "failed to pay commissions due under the [2021] Agreement and under MCL 600.2961" within 45 days of the contract termination, and as such, defendants are entitled to damages and attorney fees under MCL 600.2961. In light of our conclusion that plaintiff violated the SRCA requirement to pay defendants earned commissions within 45 days of terminating the parties' agreement, defendants "prevailed fully on each and every aspect of the claim . . . asserted *under the SRCA*." *Id*. at 223 (emphasis added). Therefore, the trial court erred by determining that defendants are not entitled to attorney fees. Accordingly, defendants are entitled to attorney fees incurred in pursuing their claim under the SRCA.

We vacate the trial court's judgment and remand to the trial court for further proceedings consistent with this opinion. We do not retain jurisdiction.

/s/ Mariam S. Bazzi
/s/ Michelle M. Rick
/s/ Allie Greenleaf Maldonado