# STATE OF MICHIGAN

# COURT OF APPEALS

LARRY A. SPEET and S'TEL GROUP, LLC,

UNPUBLISHED
May 11, 2017

Plaintiffs/Counter Defendants-
Appellants/Cross Appellees,

v

No. 330168
Kent Circuit Court
LC No. 12-009225-CK

SINTEL, INC,

Defendant/Counter Plaintiff-
Appellee/Cross Appellant.

Before: WILDER, P.J., and BOONSTRA and O'BRIEN, JJ.

PER CURIAM.

In this contractual dispute over sales commissions, plaintiffs-counter defendants Larry A. Speet (Speet) and S'Tel Group, LLC (S'Tel) (collectively, plaintiffs), appeal as of right the trial court's judgment in favor of plaintiffs following a bench trial. Defendant-counter plaintiff, Sintel, Inc (Sintel), claims its cross-appeal from that same judgment. We affirm in part, reverse in part, and remand for entry of an amended judgment consistent with this opinion.

## I. FACTUAL BACKGROUND

This case arises out of contractual agreements executed between the parties both before and after a change of management at Sintel. In March 2001, Sintel sent a proposed memorandum agreement (the 2001 agreement) to Speet, offering to pay him varying sales commissions for the generation of certain new business, and Speet accepted. In pertinent part, the 2001 agreement contained a termination clause, which provided, "THIS COMMISSION ARRANGEMENT MAY BE TERMINATED BY EITHER PARTY UPON 90 DAYS WRITTEN NOTICE. SINTEL IS RESPONSIBLE FOR PAYING COMMISSIONS ONLY ON SHIPMENTS THAT OCCUR WITH IN [sic] 90 DAYS AFTER TERMINATION."

After they entered the 2001 agreement, the parties' contractual relationship endured for over a decade unchanged. In November 2011, however, Sintel was purchased by new owners, and Nicholas Kulkarni became Sintel's president and chief executive officer. Following this change in Sintel's ownership and management, the parties began to renegotiate the terms of their agreement. Ultimately, the parties executed a new memorandum agreement, drafted by Speet (the 2012 agreement), which added S'Tel as a party to the contract. The 2012 agreement provided, among other things, "I [i.e., Speet] will support the parts/project(s) as project liaison

-1-

(sales rep.) and retain the account for the life of the project but no later than April of 2014 at which time I would like to renegotiate and renew the terms and conditions of this contract." Unlike the 2001 agreement, the 2012 agreement did not contain a termination clause.

Speet and Kulkarni gave conflicting testimony regarding the substance of the negotiations leading up to the execution of the 2012 agreement. According to Speet, the parties decided to entirely void the 2001 agreement and to replace it with a new, fully integrated expression of their intent. As evidence, Speet produced his March 30, 2012 email to Kulkarni, in which Speet wrote, "I'm in total agreement to immediately VOID the contract I have with the previous owners of Sintel and see if we can agree on a new one." Contrastingly, Kulkarni testified that the 2012 agreement was intended as an "update" to the 2001 agreement—not a replacement—further testifying that he never agreed to "void" the 2001 agreement, and that he explained to Speet that the termination clause from the 2001 agreement was important to Sintel and that Kulkarni wanted it to remain a part of the parties' agreement.

Roughly a month after the parties executed the 2012 agreement, Sintel sent notice to Speet that it was terminating the parties' agreement—pursuant to the termination clause in the 2001 agreement—for reasons not germane on appeal. For 90 days after the date of the termination notice, Sintel continued to pay commissions to Speet, thereby attempting to comport with the terms of the termination clause in the 2001 agreement.

Plaintiffs subsequently instituted this action, alleging a single count against Sintel— breach of contract—while requesting several remedies, including ongoing "commissions on all sales made by Plaintiffs to any accounts originally procured (directly or indirectly) by Plaintiffs," double damages under the penalty provision of the sales representatives' commissions act (SRCA), MCL 600.2961,[1] and statutory attorney fees under the SRCA. Among other allegations in their amended complaint, plaintiffs alleged (1) that the parties had "agreed to void" the 2001 agreement entirely and "negotiate a contract with a specific term," (2) that under the terms of the 2012 agreement, plaintiffs were entitled to the payment of commissions from Sintel through April 2014, (3) that Sintel's termination contravened the terms of the 2012 agreement, and (4) that Sintel's failure to pay plaintiffs the commissions owed within 45 days of the date they became due was a violation of the penalty provision of the SRCA. Sintel answered plaintiffs' amended complaint and alleged several counterclaims, including one for breach of contract.

The parties subsequently filed competing motions for summary disposition of all claims and counterclaims in the action, citing documentary evidence in support of their varying positions. After considering the matter, the trial court denied the parties' respective motions for summary disposition, reasoning as follows:

---

[1] Although it comprises one *section* of the revised judicature act of 1961 (RJA), MCL 600.101 *et seq.*, MCL 600.2961 is commonly referred to as the sales representatives' commissions act (SRCA). See, e.g., *Frank W Lynch & Co v Flex Technologies, Inc*, 463 Mich 578, 579; 624 NW2d 180 (2001).

In most complex commercial cases with substantial paper trails, the competing sides usually can agree on many of the facts underlying their dispute. Here, in contrast, the competing parties do not seem to agree on anything. Not surprisingly, the muddled and hotly-contested record renders it impossible to grant summary disposition under MCR 2.116(C)(10) to either side. Consequently, the Court must conduct a trial to bridge the chasm between the two sides' positions.

The matter was submitted to case evaluation, which resulted in a unanimous evaluation of $55,000 in plaintiffs' favor. Plaintiffs rejected the case evaluation, whereas Sintel accepted it.

On December 30, 2013, the trial court issued a notice instructing the parties and their counsel to appear for a settlement conference on March 10, 2014. The notice conspicuously stated the following:

**IMPORTANT: READ THIS CAREFULLY**

**"ALL PARTIES ARE TO APPEAR WITH THEIR COUNSEL AND, IN THOSE CASES WITH INSURANCE COVERAGE, AN INSURANCE COMPANY REPRESENTATIVE AUTHORIZED TO ENGAGE IN MEANINGFUL SETTLEMENT NEGOTIATIONS. NOTE: FAILURE TO ATTEND THIS CONFERENCE WILL LIKELY RESULT IN A DEFAULT OR DISMISSAL OF THIS CASE PURSUANT TO MCR 2.401(G)(1)."**

Nevertheless, neither Sintel's counsel nor any representative of Sintel appeared for the settlement conference. In response, plaintiffs' counsel orally requested that a default be entered against Sintel pursuant to MCR 2.401(G)(1). The trial court set the matter for a hearing, ordering Sintel and its counsel to appear and show cause why a default should not enter against it.

Before the ensuing show-cause hearing, plaintiffs submitted a memorandum to the trial court arguing that the proper remedy for Sintel's failure to attend the settlement conference was a default. At the hearing, Sintel's counsel accepted responsibility, stating that Sintel's failure to appear was attributable to a calendaring error. After entertaining more than an hour of oral argument, the trial court held that it would take the matter under advisement. The court later issued a reasoned, five-page order, refusing to enter a default against Sintel but awarding plaintiffs, as sanctions, their reasonable attorney fees related to preparing for and attending both the settlement conference and show-cause hearing, plus any related travel expenses or lost income suffered by Speet.

After a six-day bench trial, the court rendered its verdict. With regard to the parties' competing breach of contract claims, the court ruled in plaintiffs' favor, but not concerning all of

the allegations in plaintiffs' complaint.[2]  Based on both an examination of the contractual language and parol evidence of the parties' intent, the trial court determined that the termination clause from the 2001 agreement "survived" the 2012 "revision" of that agreement.  The trial court further determined that the termination clause obligated Sintel to pay Speet commissions for 90 days following the notice of termination.  Noting that Kulkarni had admitted as much while testifying, the trial court found that Sintel had failed to *fully* meet its obligations under the termination clause because it had issued one commission check that was "inadequate" and failed to pay any of the commissions owed to Kulkarni for August 2012.  On that basis, the trial court held that Sintel had breached the parties' agreement, awarding Speet $6,865.72 in unpaid commissions.

Turning to the SRCA aspect of plaintiffs' claim, the trial court found that Sintel's failure to timely pay some of the commissions owed under the termination clause was a "mistake" that "was truly inadvertent, rather than intentional in any sense of the word."  Hence, the court held that plaintiffs were unentitled to double damages under the penalty provision of the SRCA, MCL 600.2961(5)(b).  On the other hand, the trial court held that plaintiffs were entitled to reasonable costs and attorney fees under the SRCA, having satisfied the "narrow" definition of "prevailing party" set forth in MCL 600.2961(6).  The court reasoned that plaintiffs were the "prevailing party" because Speet "ha[d] won on the merits of his claim against Sintel for post-termination commissions, he ha[d] obtained an award of damages to compensate him for those unpaid commissions, and he ha[d] won on every counterclaim advanced by Sintel."

After the trial court rendered its verdict in favor of plaintiffs, they filed a motion seeking payment of their reasonable costs and attorney fees under the SRCA.  Sintel filed a competing motion seeking its reasonable costs and attorney fees as case evaluation sanctions.  After considering the matter, the trial court decided that plaintiffs were entitled to statutory attorney fees of $179,057.50,[3] plus costs of $4,112.42 and sanctions of $577.50 (for Speet's travel to the settlement conference), for a total award of $183,747.42.  The trial court also decided, however, that Sintel was entitled to case evaluation sanctions of $167,831.17, reasoning that, even after adjustment for costs and interest, the verdict of $6,865.72 in plaintiffs' favor was more favorable to Sintel than the case evaluation award because the adjusted verdict was more than 10% below the case evaluation of $55,000.  In so deciding, the trial court did not consider the statutory attorney fees awarded to plaintiffs to be part of the adjusted "verdict" for case evaluation purposes.  After offsetting the case evaluation sanctions awarded to Sintel against the statutory costs, statutory attorney fees, and sanctions awarded to plaintiffs, the trial court awarded plaintiffs a total of $15,916.25 in costs and fees.  Adding to that amount its verdict of $6,865.72, the trial court ultimately entered a judgment of $22,781.97 in plaintiffs' favor.

---

[2] The court rejected all of Sintel's counterclaims, including the breach of contract claim, reasoning, in pertinent part, that there was "no basis whatsoever" to find that plaintiffs breached the parties' agreement.

[3] This figure was inclusive of the $17,167.50 of attorney fees the trial court had previously awarded plaintiffs as sanctions for Sintel's failure to attend a settlement conference.

The parties' instant appeals ensued.

## II. STANDARDS OF REVIEW

The several issues raised on appeal implicate several standards of review. We review de novo whether a trial court properly construed and applied the appropriate statutes, *In re Bibi Guardianship*, 315 Mich App 323, 328; 890 NW2d 387 (2016), and court rules, *Garrett v Washington*, 314 Mich App 436, 450; 886 NW2d 762 (2016). We also review de novo a trial court's decision regarding a motion for summary disposition. *Heaton v Benton Constr Co*, 286 Mich App 528, 531; 780 NW2d 618 (2009).

> A motion under MCR 2.116(C)(10) tests the factual support of a plaintiff's claim. Summary disposition is appropriate under MCR 2.116(C)(10) if there is no genuine issue regarding any material fact and the moving party is entitled to judgment as a matter of law. In reviewing a motion under MCR 2.116(C)(10), this Court considers the pleadings, admissions, affidavits, and other relevant documentary evidence of record in the light most favorable to the nonmoving party to determine whether any genuine issue of material fact exists to warrant a trial. A genuine issue of material fact exists when the record, giving the benefit of reasonable doubt to the opposing party, leaves open an issue upon which reasonable minds might differ. [*Zaher v Miotke*, 300 Mich App 132, 139-140; 832 NW2d 266 (2013) (quotations marks and citations omitted).]

"This Court is liberal in finding genuine issues of material fact." *Jimkoski v Shupe*, 282 Mich App 1, 5; 763 NW2d 1 (2008). With regard to summary disposition, "we must limit our review to the evidence presented to the trial court at the time [the] motion was decided." *Peña v Ingham Co Rd Comm*, 255 Mich App 299, 313 n 4; 660 NW2d 351 (2003).

"Following a bench trial, we review a trial court's factual findings for clear error and its conclusions of law de novo," *Scholma v Ottawa Co Rd Comm*, 303 Mich App 12, 16; 840 NW2d 186 (2013), including its conclusions about whether a contract exists and, if so, how that contract is properly interpreted, *Kloian v Domino's Pizza LLC*, 273 Mich App 449, 452; 733 NW2d 766 (2006). "A finding is clearly erroneous if there is no evidentiary support for it or if this Court is left with a definite and firm conviction that a mistake has been made." *Chelsea Investment Group LLC v City of Chelsea*, 288 Mich App 239, 251; 792 NW2d 781 (2010). "The trial court's findings are given great deference because it is in a better position to examine the facts." *Id*.

"We review a trial court's decision regarding sanctions for an abuse of discretion." *Kaftan v Kaftan*, 300 Mich App 661, 668; 834 NW2d 657 (2013). Similarly, "[a]lthough this Court reviews de novo a trial court's decision to grant case-evaluation sanctions, the amount awarded as reasonable attorney fees is reviewed for an abuse of discretion." *McNeel v Farm Bureau Gen Ins Co of Mich*, 289 Mich App 76, 97; 795 NW2d 205 (2010). "A trial court abuses its discretion when it chooses an outcome falling outside the range of reasonable and principled outcomes, or when it makes an error of law." *Thomas M Cooley Law Sch v Doe 1*, 300 Mich App 245, 263; 833 NW2d 331 (2013) (footnote omitted).

## III. ANALYSIS

### A. SUMMARY DISPOSITION

Sintel first argues that the trial court erred by denying Sintel's motion for summary disposition under MCR 2.116(C)(10). We disagree.

The basis for Sintel's instant claim of error is its contention that the trial court erred by considering parol evidence whether the 2012 agreement was intended as an amendment or a replacement of the 2001 agreement. It is true that "[p]arol evidence is generally not admissible to vary or contradict the terms of a clear and unambiguous contract." *Smith v Smith*, 292 Mich App 699, 702; 823 NW2d 114 (2011). One exception, however, is that "parol evidence of prior or contemporaneous agreements or negotiations *is* admissible on the threshold question whether a written contract is an integrated instrument that is a complete expression of the parties' agreement." *UAW-GM Human Resource Ctr v KSL Recreation Corp*, 228 Mich App 486, 492; 579 NW2d 411 (1998) (emphasis added). See also *Schmude Oil Co v Omar Operating Co*, 184 Mich App 574, 580; 458 NW2d 659 (1990) ("A prerequisite to the application of this rule [i.e., the parol evidence rule] . . . is a finding that the parties intended the written instrument to be a complete expression of their agreement. Thus, extrinsic evidence of prior or contemporaneous agreements or negotiations is admissible as it bears on the threshold question of whether the written instrument is . . . integrated[.]"). In other words, before it can decide whether a written agreement is unambiguous and thus subject to the parol evidence rule, a court must first determine what, exactly, *constitutes* that agreement. Here, the 2012 agreement contains no integration clause, and the parties cited conflicting parol evidence about whether they intended the 2012 agreement to be fully integrated—i.e., whether the 2012 agreement was intended as an amendment or a superseding replacement of the 2001 agreement. Such conflicting evidence yielded a genuine issue of material fact for resolution at trial. Consequently, the trial court did not err by denying Sintel's motion for summary disposition under MCR 2.116(C)(10).

### B. VERDICT

In varying ways, both plaintiffs and Sintel argue that the trial court either misinterpreted or misapplied the parties' agreement following trial, further arguing that the trial court's verdict relied on clearly erroneous factual findings. We disagree in all respects.

As we have already clarified, it was appropriate for the trial court to consider parol evidence on the threshold question of whether the 2012 agreement was fully integrated, and we reject plaintiffs' argument to the contrary. After duly considering such evidence at trial, the court decided that the parties intended the 2012 agreement as an amendment to the 2001 agreement, not a replacement. We perceive no clear error in the trial court's finding in that respect. Indeed, given the conflicting testimony of Speet and Kulkarni on this topic, the trial court's finding represents a credibility determination that we will not displace on appeal. See *Richards v Richards*, 310 Mich App 683, 694; 874 NW2d 704 (2015) ("[T]his Court defers to a trial court's findings of fact stemming from credibility determinations."). For that same reason, we also defer to the trial court's finding that Speet did not breach the parties' agreement before Sintel did so. Although Kulkarni testified that Speet failed to perform, both Speet and a representative from one of Sintel's corporate customers testified to the contrary. Considering the

inherent credibility determinations underlying the trial court's finding that Speet *did* perform, we will not replace our judgment, formed by reviewing the one-dimensional text of a trial transcript, for that of the trial court, which was formed while observing live testimony over the course of several days.

Furthermore, we perceive no error in the trial court's ultimate interpretation of the parties' agreement. "When interpreting a contract, this Court's primary task is to determine the intent of the contracting parties. If a contract's language is not ambiguous, this Court will construe the contract and enforce its terms as written." *Trader v Comerica Bank*, 293 Mich App 210, 215-216; 809 NW2d 429 (2011). "[W]hen parties enter into multiple agreements relating to the same subject-matter, we must read those agreements together to determine the parties' intentions." *Wyandotte Elecric Supply Co v Electrical Technology Sys, Inc*, 499 Mich 127, 148; 881 NW2d 95 (2016). However, "where the parties expressly modify their previous contract, rescission of the terms of the prior agreement is a necessary implication. By the clear expression of the parties, *contradictory* provisions in the prior agreement are *waived*." *Quality Products & Concepts Co v Nagel Precision, Inc*, 469 Mich 362, 373; 666 NW2d 251 (2003) (first emphasis added).

Turning to the facts of this case, after deciding that the parties intended the 2012 agreement to serve as an amendment of the 2001 agreement, it was proper for the trial court to conclude that the 2001 agreement's termination clause survived as part of the parties' contract. Because the 2012 agreement did not cover the subject of termination, the 2001 agreement's termination clause was consistent with—and not waived by—the terms of the 2012 agreement. Therefore, Sintel was entitled to terminate the parties' agreement at will but, after doing so, was required to compensate plaintiffs for commissions on shipments that occurred within 90 days following termination.

Nor is this construction inconsistent, as plaintiffs argue, with the portion of the 2012 agreement which indicated that Speet would "retain the account for the life of the project but no later than April of 2014. . . ." Plaintiffs' argument attempts to create dissonance between two provisions that are harmonious. The termination clause provided that the parties' agreement could be terminated 90 days after written notice was provided, which is in no way inconsistent with the parties' agreement that Speet would retain the account for the life of the project. The termination provision merely afforded the parties an option to shorten the duration of their agreement, regardless of the lifespan of any projects it covered.

## C. STATUTORY ATTORNEY FEES UNDER THE SRCA

Sintel argues that the trial court erred by deciding that plaintiffs were the "prevailing party" for SRCA purposes pursuant to MCL 600.2961(1)(c). We agree.

As part of the RJA, the SRCA "is remedial in character, and shall be liberally construed to effectuate the intents and purposes thereof." MCL 600.102. However, such rules of liberal construction "are employed to resolve *ambiguities*, not negate the import of clear statutory requirements." *Rakestraw v Gen Dynamics Land Sys, Inc*, 469 Mich 220, 233 n 12; 666 NW2d 199 (2003) (emphasis added). When the statutory language "is clear and unambiguous, the plain meaning of the statute reflects the legislative intent and judicial construction is not permitted."

*Tryc v Michigan Veterans' Facility*, 451 Mich 129, 136; 545 NW2d 642 (1996). "Normally, this Court will accord an undefined statutory term its ordinary and commonly used meaning. However, where the Legislature uses a technical word that has acquired a particular meaning in the law, and absent any contrary legislative indication, we construe it 'according to such peculiar and appropriate meaning.' " *Grange Ins Co of Mich v Lawrence*, 494 Mich 475, 493; 835 NW2d 363 (2013) (footnote omitted), quoting MCL 8.3a. "[W]hen a statute specifically defines a given term, that definition alone controls." *Tryc*, 451 Mich at 135.

Attorney fees provided under the SRCA are a statutory exception to the general rule followed by Michigan Courts, i.e., the "American rule," under which attorney "fees are not generally recoverable unless a statute, court rule, or common-law exception provides otherwise." See *Silich v Rongers*, 302 Mich App 137, 147-148; 840 NW2d 1 (2013). See also *Matras v Amoco Oil Co*, 424 Mich 675, 695; 385 NW2d 586 (1986) ("Attorney fees ordinarily are not recoverable at common law, but may be recoverable where a statute specifically so provides."). Exceptions to the American rule are narrowly construed. *Fleet Bus Credit v Krapohl Ford Lincoln Mercury Co*, 274 Mich App 584, 589; 735 NW2d 644 (2007).

Likewise, the exception provided by the SRCA is narrowly drafted. *Peters v Gunnell, Inc*, 253 Mich App 211, 223; 655 NW2d 582 (2002). As the *Peters* Court explained, in MCL 600.2961(1)(c) "the Legislature chose to severely limit the instances where reasonable attorney fees and costs are awarded," and hence "a party cannot be deemed a prevailing party entitled to reasonable attorney fees and court costs unless that party is found to have prevailed fully on each and every aspect of the claim or defense asserted under the SRCA." *Peters*, 253 Mich App at 223.

As a preliminary matter, the trial court erred by determining that plaintiffs' victory with regard to "every counterclaim advanced by Sintel" was pertinent to the question of whether plaintiffs were the prevailing parties for SRCA purposes. See *id*. at 225 ("Because the attorney fees provision of the SRCA relates only to prevailing parties on original causes of action under the SRCA and responses to those actions, we conclude that the disposition of defendant's countercomplaint has no bearing on plaintiff's entitlement to attorney fees and costs under the SRCA.").

The trial court further erred by deciding that plaintiffs had satisfied the narrow definition of "prevailing party" provided by subsection (1)(c). Contrary to plaintiffs' argument on appeal, the narrowness of this statutory definition must not deter us from faithfully interpreting the statutory language. See *State Farm Fire & Cas Co v Old Republic Ins Co*, 466 Mich 142, 149; 644 NW2d 715 (2002) ("It is not the role of the judiciary to second-guess the wisdom of a legislative policy choice; our constitutional obligation is to interpret—not to rewrite—the law."). In this case, plaintiffs did not prevail regarding either each and every aspect of their SRCA cause of action or all responses filed to it. On the contrary, the trial court specifically rejected plaintiffs' allegations (1) that the parties had "agreed to void" the 2001 agreement entirely and "negotiate a contract with a specific term," (2) that under the terms of the 2012 agreement, plaintiffs were entitled to the payment of commissions from Sintel through April 2014, (3) that Sintel's termination of the agreement contravened the 2012 agreement, and (4) that Sintel's failure to pay plaintiffs the commissions owed within 45 days of the date they became due was a violation of the penalty provision of the SRCA. Furthermore, the trial court's rejection of those

allegations naturally had the equal and opposite effect; it constituted *acceptance* of several of Sintel's responses and defenses to plaintiffs' amended complaint. Therefore, plaintiffs were not the "prevailing party" entitled to attorney fees under the SRCA.[4] By holding otherwise, the trial court erred.

## D. SETTLEMENT-CONFERENCE SANCTIONS

Sintel contends that the trial court abused its discretion by awarding plaintiffs attorney fees and costs related to Sintel's failure to appear at a settlement conference. We disagree.

"[T]rial courts possess the inherent authority to sanction litigants and their counsel, including the power to dismiss an action." *Maldonado v Ford Motor Co*, 476 Mich 372, 376; 719 NW2d 809 (2006). "This power is not governed so much by rule or statute, but by the control necessarily vested in courts to manage their own affairs so as to achieve the orderly and expeditious disposition of cases." *Id*. However, trial courts are also invested with the power to sanction by both statute and court rule. *Id*. Of particular note in this case are MCL 600.611 ("Circuit courts have jurisdiction and power to make any order proper to fully effectuate the circuit courts' jurisdiction and judgments."), MCR 2.504(B)(1) ("If a party fails to comply with these rules or a court order, upon motion by an opposing party, or sua sponte, the court may enter a default against the noncomplying party or a dismissal of the noncomplying party's action or claims."), and MCR 2.401(G), which provides as follows:

> (G) Failure to Attend or to Participate.
>
> (1) Failure of a party or the party's attorney or other representative to attend a scheduled conference or to have information and authority adequate for responsible and effective participation in the conference for all purposes, including settlement, as directed by the court, may constitute a default to which MCR 2.603 is applicable or a ground for dismissal under MCR 2.504(B).
>
> (2) The court shall excuse a failure to attend a conference or to participate as directed by the court, and shall enter a just order other than one of default or dismissal, if the court finds that

---

[4] We find plaintiffs' reliance on *HJ Tucker & Assoc, Inc v Allied Chucker & Engineering Co*, 234 Mich App 550, 560-561; 595 NW2d 176 (1999), misplaced. *HJ Tucker* is distinguishable because the question at issue there is not at issue here. In *HJ Tucker*, the question was whether a plaintiff who pleaded several claims—both related and unrelated to the SRCA—and failed to prevail on *all claims*, could nevertheless be considered the "prevailing party" under MCL 600.2961(1)(c). *Id*. at 555-561. Contrastingly, in this case, as in *Peters*, the analysis involves only a *single* claim—one pursued under the SRCA—and thus the issue is drawn to a finer point: whether a plaintiff must prevail on all allegations in support of its SRCA cause of action to be the prevailing party under MCL 600.2961(1)(c).

(a) entry of an order of default or dismissal would cause manifest injustice; or

(b) the failure was not due to the culpable negligence of the party or the party's attorney.

The court may condition the order on the payment by the offending party or attorney of reasonable expenses as provided in MCR 2.313(B)(2).

Because "[d]ismissal is a drastic step that should be taken cautiously," "[b]efore imposing such a sanction, the trial court is required to carefully evaluate all available options on the record and conclude that the sanction of dismissal is just and proper." *Vicencio v Ramirez*, 211 Mich App 501, 506; 536 NW2d 280 (1995). In deciding whether dismissal is an appropriate remedy, the trial court should—on the record—consider the following nonexhaustive list of factors:

(1) whether the violation was wilful or accidental; (2) the party's history of refusing to comply with previous court orders; (3) the prejudice to the opposing party; (4) whether there exists a history of deliberate delay; (5) the degree of compliance with other parts of the court's orders; (6) attempts to cure the defect; and (7) whether a lesser sanction would better serve the interests of justice. [*Id*. at 507.]

Here, Sintel contends that the trial court abused its discretion by awarding plaintiffs costs and attorney fees not *directly* related to the settlement conference. In other words, Sintel argues that plaintiffs were unentitled to costs and attorney fees accrued in preparing for and attending the show-cause hearing. Sintel is incorrect. At the time plaintiffs initially requested a default, they had no way of knowing whether the failure of Sintel and its counsel to appear for the settlement conference was inadvertent, nor did the trial court have such knowledge when it scheduled the show-cause hearing. Indeed, the *purpose* of that hearing was for Sintel to show cause why a default should *not* enter against it, and the trial court was required to hold such a hearing to determine the proper sanction for Sintel's failure to appear. See *id*. Given the trial court's discretion to grant a default against Sintel, it was entirely reasonable for plaintiffs to advocate for that remedy. That the trial court ultimately declined to issue a default does not detract from the propriety of plaintiffs' request for one.[5] The length of time that the trial court spent on this matter and the depth of its analysis demonstrate that plaintiffs' position was not frivolous. Hence, the trial court did not abuse its discretion by granting plaintiffs sanctions inclusive of all fees incurred as a consequence of Sintel's failure to attend the settlement conference.

---

[5] We do not suggest that a request for a default under MCR 2.401(G) will *always* be reasonable, only that plaintiffs' request in this case was reasonable based on the surrounding facts and circumstances.

E.  CASE EVALUATION SANCTIONS

On the topic of case evaluation sanctions, the parties present us with several competing claims of error.  We reject each.

1.  ATTORNEY FEES AS PART OF THE CASE EVALUATION "VERDICT"

Positing that the statutory attorney fees awarded under the SRCA should have been included as part of the adjusted verdict for case evaluation purposes under MCR 2.403(O), plaintiffs contend that the trial court erred by deciding that Sintel was entitled to case evaluation sanctions.[6]  Because we conclude that plaintiffs were not entitled to costs and fees under the SRCA, plaintiffs' instant claim of error necessarily fails.  It also fails because, even if plaintiffs could demonstrate their entitlement to the statutory attorney fees in question, there is no record evidence indicating that such fees were considered by the case evaluators as part of their valuation; rather, the relevant evidence supports the opposite conclusion.  See *Ivezaj v Auto Club*, 275 Mich App 349, 366; 737 NW2d 807 (2007) ("[I]n the absence of evidence to the contrary, we assume that the case evaluators did not include the value of these attorney fees in their valuation of the case.  Therefore, the award of attorney fees should not be included as part of the "verdict" when determining if a party is liable for case evaluation sanctions.").

2.  AMOUNT OF ATTORNEY FEES AWARDED

As aptly described by the trial court, this case represents "the hypertrophy of attorney-fee litigation," with the combined filings on that issue in the lower court tipping the scales at over 30 pounds.  On appeal, both plaintiffs and Sintel continue to dispute the reasonableness of the attorney fees awarded to Sintel.  Plaintiffs contend that the amount awarded was "grossly excessive," whereas Sintel contends that it should have been awarded additional fees for having a second attorney represent it at trial.  We disagree in both respects.

"[T]he burden of proving the reasonableness of the requested fees rests with the party requesting them."  *Smith v Khouri*, 481 Mich 519, 528-529; 751 NW2d 472 (2008).  In determining a reasonable fee, "a trial court should begin its analysis by determining the fee customarily charged in the locality for similar legal services," using "reliable surveys or other credible evidence of the legal market" to do so.  *Id*. at 530-531.  The trial court should then multiply the reasonable hourly rate "by the reasonable number of hours expended in the case," and the product "should serve as the starting point for calculating a reasonable attorney fee."  *Id*. at 531.  "Thereafter, the court should consider . . . whether an up or down adjustment is appropriate" based on the two nonexhaustive lists of factors set forth in *Smith*, several of which are overlapping. *Id*. at 529-530.

---

[6] Plaintiffs do not argue that the trial court should have included their SRCA attorney fees as "assessable costs" under MCR 2.403(O)(3), instead correctly noting that any such argument is undone by the contrary holding in *Dessart v Burak*, 470 Mich 37, 42; 678 NW2d 615 (2004).

In the instant case, after consulting the 2014 Economics of Law Practice Survey, the trial court determined a reasonable hourly rate for each of the five attorneys Sintel had employed since case evaluation. Plaintiffs offer no argument or evidence that those hourly rates were unreasonable.

Next, the trial court engaged in a thoughtful analysis of the reasonable number of hours spent by each of Sintel's attorneys since it received notice of the results of case evaluation. The trial court allowed the majority of the billings but disallowed others as unreasonable, including time spent in preparation for the settlement conference that Sintel failed to attend, time billed by attorney Ryan that the court found to be "either redundant or simply fabricated," time spent transferring Sintel's case from one law firm to another, the time billed for attorney Ryan's presence as "second chair at trial," and time billed for support staff whose professional qualifications had not been proven by record evidence. By multiplying each attorney's reasonable number of hours worked by his or her reasonable hourly rate, the trial court arrived at a total of $167,747.75.

Thereafter, the trial court considered the nonexhaustive factors iterated by *Smith* and decided that there was "no basis to either increase or decrease the calculated amount" of fees. The court reasoned that the figure at which it had arrived was reasonable "in every sense," further reasoning that "the attorney fees incurred by Sintel after the plaintiffs rejected the case-evaluation award line up consistently with the attorney fees claimed by the plaintiffs for that same period of time."

We perceive no abuse of discretion in the trial court's ruling. "An abuse of discretion is not simply a matter of a difference in judicial opinion," *Augustine v Allstate Ins Co*, 292 Mich App 408, 419; 807 NW2d 77 (2011), and plaintiffs offer no concrete analysis of how the trial court *should* have ruled—or why it should have ruled differently—instead merely announcing that the fees awarded to Sintel were grossly excessive. Upon plenary review of the record, however, we find nothing to indicate that the trial court's decision regarding the reasonableness of Sintel's fees fell outside the range of reasonable and principled outcomes.

Furthermore, we are unconvinced by Sintel's argument that it should have received attorney Ryan's fees for serving as second chair at trial. For case evaluation purposes, a *reasonable* fee does not always equate to the *actual* fee. *Smith*, 481 Mich at 528. While it "may" be reasonable in a given case to permit fees for multiple representation at trial, see, e.g., *Attard v Citizens Ins Co of America*, 237 Mich App 311, 329-330; 602 NW2d 633 (1999), it does not follow that dual trial representation is *always* reasonable. Quite the opposite, when determining the number of hours reasonably spent on a case, a trial court has discretion to exclude billings that it deems excessive or duplicative. *Van Elslander v Thomas Sebold & Assoc, Inc*, 297 Mich App 204, 239; 823 NW2d 843 (2012). Here, while acknowledging that it understood why Sintel decided to have two attorneys present, the trial court held that it was only reasonable to award fees for representation by a single attorney at trial. Given the trial court's intimate familiarity with the proceedings below, it was uniquely qualified to determine whether Sintel's use of dual counsel was actually necessary to try this case or was merely redundant, and we do not question the court's judgment in that regard. Sintel has not demonstrated that the trial court's decision landed afield of the range of reasonable and principled outcomes.

## IV. CONCLUSION

We affirm in part, reverse in part, and remand for entry of an amended judgment consistent with this opinion. No costs may be taxed by the parties pursuant to MCR 7.219, none having prevailed in full. We do not retain jurisdiction.

/s/ Kurtis T. Wilder
/s/ Mark T. Boonstra
/s/ Colleen A. O'Brien