*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

*In re* MLH, Minor.

UNPUBLISHED
April 20, 2023

No. 362563
Kalamazoo Circuit Court
Family Division
LC No. 2020-000239-NA

Before: SHAPIRO, P.J., and REDFORD and YATES, JJ.

PER CURIAM.

Respondent-mother appeals by right the trial court's July 17, 2022 order terminating her parental rights to minor child MLH under MCL 712A.19b(3)(c)(*i*) (the conditions that led to the adjudication continued to exist and no reasonable likelihood existed that those conditions would be rectified within a reasonable time considering the child's age), MCL 712A.19b(3)(c)(*ii*) (failure to rectify the conditions after given reasonable opportunity to do so), and MCL 712A.19b(3)(j) (the child would be harmed if returned to respondent because of respondent's conduct). We affirm.

## I. BACKGROUND FACTS

Respondent gave birth to MLH in early September 2020. Joshua Heuschen is MLH's legal father by affidavit of parentage which he signed at the hospital.[1] Petitioner, the Department of Health and Human Services (DHHS), sought MLH's removal and placement into care because respondent had ongoing substance abuse problems and had her rights to another child by a different father terminated around one week before MLH's birth. The trial court entered an ex parte order placing MLH into protective custody with DHHS and ordered a preliminary hearing. At the preliminary hearing, the trial court found that a substantial risk of harm existed and that it was contrary to MLH's welfare to remain in respondent's home. On September 11, 2020, DHHS filed a new petition seeking termination of respondent's parental rights to MLH. DHHS alleged, among

---

[1] Heuschen is not a party to this appeal. Although a petition had been filed to terminate his parental rights to MLH, the trial court dismissed it without prejudice because Heuschen demonstrated that he sufficiently progressed and benefited from services, thus that the court permitted Heuschen and his sister with whom he lived custody and care of MLH.

-1-

other things, that respondent's rights to another child were terminated with her consent on August 27, 2020, because she could not provide that child a non-neglectful home and would not be able to do so within a reasonable time, and that the barriers that stood in the way of reunification such as substance abuse, emotional instability, and lack of parenting skills, remained despite respondent's participation in services, in that she tested positive for methamphetamine throughout the pendency of that case. The petition also alleged that respondent had convictions for operating a motor vehicle while intoxicated because of alcohol abuse. The petition further alleged that respondent had been the subject of at least five domestic violence investigations of abuse involving respondent and Heuschen. The trial court authorized the petition.

At a hearing held on January 6, 2021, respondent agreed to enter a plea of admission to the allegations in the petition in return for the withdrawal of the request for termination of her parental rights to MLH. The court accepted respondent's plea and permitted the withdrawal of the termination request. The court ordered respondent to participate in services and do all she could to rectify the issues and ordered respondent to attend counseling, undergo random drug screenings, attend parenting classes, and permitted respondent supervised parenting time with MLH at DHHS's discretion.

During the pendency of this case, the trial court conducted numerous hearings during which the court reviewed evidence and heard testimony that respondent failed to regularly participate in services and benefit from them and continued to have substance abuse issues, failed to drug screen, missed parenting-time sessions, stopped attending therapy sessions, and had warrants for her arrest for probation violations related to her drunk driving convictions. Caseworkers testified that substance abuse, parenting skills, emotional stability, housing, communication, and criminal activity remained problems for respondent. Each time the trial court ordered the continuation of its orders regarding services, drug screens, and parenting time, only to learn at the next hearing that respondent continued to fail to comply with and benefit from her case service plan. At the various hearings, after caseworkers reported each time respondent's lack of progress, respondent testified blaming illness and other things for her lack of progress and failure to comply with her parent-agency treatment plan.

Although the court ordered respondent to have supervised parenting time twice a week for one hour with MLH, she missed numerous visits. Further, despite the court's orders that respondent not have contact with Heuschen because of their history of domestic abuse and the fact that the court permitted him custody of MLH, respondent became pregnant again by Heuschen with JMH who was born during May 2022. After his birth, tests of the child's meconium revealed that the child had high concentrations of amphetamines, methamphetamine, and THC in his system. The trial court, therefore, also removed JMH from respondent's care. As a result, on May 24, 2022, petitioner filed a petition to terminate respondent's parental rights to JMH. The trial court released JMH to Heuschen's custody and ordered respondent to have no contact with the child outside of DHHS's supervised parenting time.

On June 9, 2022, the trial court commenced the three-day termination hearing based on the supplemental petition seeking termination of respondent's parental rights to MLH. Respondent's probation officer testified regarding respondent's drunk driving conviction, sentence to participate in the Kalamazoo Probation Enhanced Program (KPEP), temporary release to home during December 2021 because of her COVID-19 infection, order to return to KPEP in January 2022, and

failure to return which resulted in the issuance of a warrant for respondent's arrest. Respondent's caseworker also testified regarding the numerous services made available to respondent during the pendency of this case and respondent's failure to participate in those services. The caseworker reported that respondent tested positive for amphetamines, methamphetamine, THC, and alcohol numerous times and failed to complete the counseling and substance abuse services made available to her. Further, respondent completed only 53 of 175 parenting-time visits, cancelled some early, and never sought modification of the order of the court for the twice weekly hour-long supervised visits. The caseworker also testified that, despite attempts to arrange home assessments, respondent failed to permit them and when such were arranged failed to show. MLH was 18 months old and respondent had never had her in her care and had not established a bond with the child. Respondent also had a history of becoming hostile and oppositional with her caseworkers.

Respondent testified that she felt that she was addressing her substance abuse problem and participated in the services ordered and benefited from them. She explained that she became infected with COVID-19 and went home from KPEP and after she recovered she did not return to KPEP because of complications with her pregnancy. She testified that she worked at rectifying the conditions and if given more time would be successful now that her health complications were no longer a barrier. She claimed that she would go back into KPEP the next week and start getting back on track and rectify her issues in a short time. She requested that the court not terminate her parental rights. During cross-examination, she admitted having multiple drunk driving convictions including a felony third offense conviction which resulted in probation, and admitted violating the terms of her probation. She refused to answer questions regarding use of methamphetamine and initially asserted that she lacked awareness of JMH's meconium test results but stated that she disagreed with the results. Ultimately, she admitted that JMH tested positive at birth for methamphetamine. She stated that she did not have an explanation for that. The trial court adjourned the termination hearing.

When the trial court reconvened the termination hearing on June 14, 2022, respondent did not appear. The trial court placed a DHHS representative under oath who testified that she learned that respondent went to the Borgess Hospital Emergency Department and had been discharged approximately 20 minutes before the hearing. Respondent's counsel moved for adjournment and the court granted the motion but ordered respondent to provide verification of receipt of medical treatment and an explanation for her nonappearance.

On June 15, 2022, petitioner filed a petition seeking termination of respondent's parental rights to JMH that alleged that on June 14, 2022 and June 15, 2022, Heuschen allowed an overnight visit of JMH by an unauthorized relative without DHHS's consent, allowed respondent access to JMH without DHHS's consent, let respondent stay overnight at his house with the children present, and that Heuschen could not locate JMH for hours because respondent and an unauthorized relative left with him. At the preliminary hearing on that petition, the trial court heard testimony that Heuschen dropped JMH off at the home of respondent's mother, and respondent had contact with JMH and at some point left with the child. Heuschen then not knowing where the child was, called the police who located respondent and the child. The caseworker then went to respondent's house and retrieved the child.

On June 17, 2022, the trial court reconvened the termination hearing respecting the petition to terminate respondent's parental rights to MLH. Respondent stipulated to admitting that she

currently housed at KPEP due to her criminality and was ordered to participate in substance abuse services which the parties stipulated satisfied MCL 712A.2(b)(1-5). The trial court next explained that the proofs were concluded in the trial in this case respecting respondent's parental rights to MLH in relation to this case. Petitioner requested that the court terminate respondent's parental rights under MCL 712A.19b(3)(c)(*i*) because the conditions that led to the adjudication continued to exist and no reasonable likelihood existed that those conditions would be rectified within a reasonable time considering the child's age, MCL 712A.19b(3)(c)(*ii*) because respondent failed to rectify the conditions after given reasonable opportunity to do so, MCL 712A.19b(3)(j) because MLH would be harmed based on respondent's conduct. Petitioner recounted the evidence establishing statutory grounds. Petitioner also argued that termination served MLH's best interests because the applicable factors all favored termination. MLH's attorney guardian ad litem agreed that respondent's parental rights to MLH should be terminated. Respondent opposed termination and argued that illness and pregnancy complications, among other things, interfered with respondent's progress at rectifying the conditions that led to MLH's removal; but because she returned to KPEP, she would address her substance abuse problem and given time and opportunity respondent would bond with MLH, and the child would not be harmed by not terminating respondent's parental rights to her.

The trial court recounted the testimony and evidence presented to the court over the course of this case and found that clear and convincing evidence established statutory grounds for termination of respondent's parental rights to MLH. The trial court then considered whether termination of respondent's parental rights to MLH served MLH's best interests. The court weighed the applicable best-interest factors and found that they favored termination. The trial court, therefore, ordered respondent's parental rights to MLH terminated.

Over a month later, respondent moved for the trial court's recusal and for rescission of the court's order terminating respondent's parental rights to MLH. The motion asserted that respondent and Joshua Disbrow had a minor child and had a court proceeding regarding parenting time, custody, and child support in which Rex Brueggemann, a partner in a law firm, Brueggemann and Sharma Law Firm, represented Disbrow. Respondent contended that the presiding judge in this matter, Circuit Judge Namita Sharma, and attorney Brueggemann were married. Respondent asserted that the court did not give notice to respondent of such information or provide respondent an opportunity to waive any potential conflict. Respondent requested that the presiding judge recuse herself from further proceedings, rescind the termination order respecting MLH, and have all matters reassigned to another judge. In her supporting brief, respondent argued that an appearance of impropriety existed in violation of the Michigan Code of Judicial Conduct because Judge Sharma made "decisions regarding a party opponent to her former law firm" "which anyone may reasonably surmise that this breeches the appearance of impropriety." Respondent questioned whether Judge Sharma could be fair under those circumstances.

The trial court considered the motion and addressed it in a written opinion and order denying the motion. This appeal followed.

## II. STANDARDS OF REVIEW

We review de novo questions of law, such as the proper interpretation and application of a court rule. *Henry v Dow Chem Co*, 484 Mich 483, 495; 772 NW2d 301 (2009).

-4-

This Court reviews for an abuse of discretion a trial court's factual findings regarding a motion for disqualification while its application of the facts to the law is reviewed de novo. An abuse of discretion occurs when the trial court's decision is outside the range of reasonable and principled outcomes. [*TT v KL*, 334 Mich App 413, 431; 965 NW2d 101 (2020) (quotation marks and citations omitted).]

We review unpreserved issues for plain error affecting substantial rights. *In re Utrera*, 281 Mich App 1, 8; 761 NW2d 253 (2008). To avoid forfeiture under the plain error analysis, respondent must establish that (1) error occurred, (2) the error was clear or obvious, and (3) the error affected substantial rights. *People v Carines*, 460 Mich 750, 763, 774; 597 NW2d 130 (1999). The third requirement generally requires showing that the error affected the outcome of the lower court proceedings. *Id.* Respondent bears the burden of establishing prejudice. *Id.* "Reversal is warranted only when the plain, forfeited error resulted in the conviction of an actually innocent defendant or when an error seriously affected the fairness, integrity, or public reputation of the judicial proceedings independent of the defendant's innocence." *Id.* at 763-764 (quotation marks and citation omitted). See also *In re Utrera*, 281 Mich App at 9.

## III. ANALYSIS

## A. RECUSAL

Respondent first argues that the presiding judge erred by not recusing herself under MCR 2.003(C)(1)(b)(*ii*) for failing "to adhere to the appearance of impropriety standard set forth in Canon 2 of the Michigan Code of Judicial Conduct" because, about four years before this case commenced, the judge's husband and her then partner in their law firm, represented a man with whom respondent had a child custody dispute. Respondent's argument lacks merit.

"Due process requires that an unbiased and impartial decision-maker hear and decide a case." *TT*, 334 Mich App at 431 (quotation marks and citation omitted). This Court presumes that a judge is unbiased, and the party moving to recuse has the heavy burden of overcoming that presumption. *Id.*, see also *Cain v Dep't of Corrections*, 451 Mich 470, 497; 548 NW2d 210 (1996). MCR 2.003 sets forth the nonexclusive grounds and procedure for disqualification of a judge. *TT*, 334 Mich App at 432; see also *People v Houston*, 179 Mich App 753, 755; 446 NW2d 543 (1989).

MCR 2.003 in relevant part provides:

(C) Grounds.

(1) Disqualification of a judge is warranted for reasons that include, but are not limited to, the following:

(a) The judge is biased or prejudiced for or against a party or attorney.

(b) The judge, based on objective and reasonable perceptions, has either (*i*) a serious risk of actual bias impacting the due process rights of a party as enunciated in *Caperton v Massey*, 556 US 868; 129 S Ct 2252; 173 L Ed 2d 1208 (2009), or (*ii*) has failed to adhere to the appearance of impropriety standard set forth in Canon 2 of the Michigan Code of Judicial Conduct.

(c) The judge has personal knowledge of disputed evidentiary facts concerning the proceeding.

(d) The judge has been consulted or employed as an attorney in the matter in controversy.

(e) The judge was a partner of a party, attorney for a party, or a member of a law firm representing a party within the preceding two years.

(f) The judge knows that he or she, individually or as a fiduciary, or the judge's spouse, parent or child wherever residing, or any other member of the judge's family residing in the judge's household, has more than a de minimis economic interest in the subject matter in controversy that could be substantially impacted by the proceeding.

(g) The judge or the judge's spouse, or a person within the third degree of relationship to either of them, or the spouse of such a person:

(i) is a party to the proceeding, or an officer, director, or trustee of a party;

(ii) is acting as a lawyer in the proceeding;

(iii) is known by the judge to have a more than de minimis interest that could be substantially affected by the proceeding;

(iv) is to the judge's knowledge likely to be a material witness in the proceeding.

\* \* \*

(D) Procedure.

(1)(a) Time for Filing in the Trial Courts. To avoid delaying trial and inconveniencing the witnesses, all motions for disqualification must be filed within 14 days of the discovery of the grounds for disqualification. If the discovery is made within 14 days of the trial date, the motion must be made forthwith.

"[T]he appearance of impropriety, under Canon 2 of the Michigan Code of Judicial Conduct, may provide grounds for disqualification of a judge." *Okrie v State*, 306 Mich App 445, 472; 857 NW2d 254 (2014). Canon 2(A) provides:

Public confidence in the judiciary is eroded by irresponsible or improper conduct by judges. A judge must avoid all impropriety and appearance of impropriety. A judge must expect to be the subject of constant public scrutiny. A judge must therefore accept restrictions on conduct that might be viewed as burdensome by the ordinary citizen and should do so freely and willingly.

In *Okrie*, this Court instructed:

> Under this objective standard, whether an appearance of impropriety exists requires consideration of whether the conduct would create in reasonable minds a perception that the judge's ability to carry out judicial responsibilities with integrity, impartiality and competence is impaired. [*Okrie*, 306 Mich App at 472 (quotation marks and citations omitted); see also *TT*, 334 Mich App at 433; *Kern v Kern-Koskela*, 320 Mich App 212, 232; 905 NW2d 453 (2017).]

In this case, objective analysis of the facts and proceedings does not support respondent's claim that recusal was required under MCR 2.003(C)(1)(b) and Code of Judicial Conduct, Canon 2. The record indicates that Judge Sharma's personal and professional partner, her husband, represented a party adverse to respondent in a child custody case in 2016, around four years before the commencement of this case days after MLH's birth. Judge Sharma did not dispute the fact of her husband and former partner's representation of a man with whom respondent had a child custody dispute. Judge Sharma considered the allegation but pointed out the remoteness of that case from this case, that the parties differed, and that this case involved matters pertaining to MLH not the child who was the subject of the custody dispute. In denying respondent's motion, Judge Sharma correctly observed that the child involved in the 2016 case was not MLH and the person represented was never a party to this action. Respondent offers nothing but abstract speculation that the fact of the judge's husband's representation alone creates a perception of impropriety, and that the judge's ability to judge with integrity, impartiality, and competence may have been impaired. Review of the entire file in this case, however, does not permit a reasonable mind to conclude that an appearance of impropriety existed. From an objective analysis, no reasonable mind could perceive that Judge Sharma's ability to faithfully carry out her judicial responsibilities suffered from any impairment.

On the contrary, the record, in fact, reflects that Judge Sharma executed her judicial responsibilities properly without bias or prejudice toward any party, particularly respondent, who repeatedly failed to comply with the court's orders which appropriately addressed the serious concerns for the safety and well-being of MLH and provided for respondent to rectify the conditions that led to MLH's removal. Despite respondent's conduct, Judge Sharma granted respondent multiple opportunities for nearly two years to take personal responsibility and corrective action to enable her to rectify the conditions and reunify with MLH. Respondent failed to do so, and she is not entitled to reversal of the trial court's decision to terminate her parental rights to MLH on the ground that Judge Sharma should have recused herself and rescinded that decision. The record also indicates that Judge Sharma applied the required objective analysis for her decision to deny respondent's meritless motion. Accordingly, we affirm the trial court's decision.

Petitioner argues that respondent untimely filed her recusal motion and therefore waived the issue for appellate review. Petitioner correctly points out that MCR 2.003(D)(1)(a) requires that "all motions for disqualification must be filed within 14 days of the discovery of the grounds for disqualification," and that respondent's motion and affidavit indicate that respondent knew of the alleged ground for disqualification as of June 14, 2022, but failed to file her recusal motion until July 19, 2022. We agree that respondent failed to timely file her motion. The rule requires filing all motions for disqualification within 14 days of discovery of the grounds for

disqualification. There is no broader classification than the word "all," and the word "all" leaves no room for exceptions. *Peters v Gunnell, Inc*, 253 Mich App 211, 223; 655 NW2d 582 (2002). Accordingly, respondent untimely filed her motion and the trial court could have denied the motion on that ground alone.

### B. UNPRESERVED PROCEDURAL DUE-PROCESS CLAIM

Respondent argues for the first time on appeal that her procedural due-process rights and constitution right to effective assistance of counsel were violated because the trial court failed to ensure that respondent received reports, and the court's court-appointed counsel payment policy—which she alleges does not pay for counsel's review of reports ahead of hearings—prevented respondent's counsel from providing effective assistance. These arguments lack merit.

"For an issue to be preserved for appellate review, it must be raised, addressed, and decided by the lower court." *Mouzon*, 308 Mich App at 419 (quotation marks and citation omitted). In this case, respondent never objected to the timing of reports, never raised a procedural due-process issue, never raised any issue regarding her counsel's adequacy of preparation or representation, and never asserted that the circuit court's payment policy for court-appointed counsel prevented her counsel from providing effective assistance during the lower court proceedings. Respondent, therefore, failed to preserve any of these claimed errors for appeal. Accordingly, we review this issue for plain error affecting substantial rights.

Significantly, on appeal, respondent does not challenge the trial court's ruling that statutory grounds for termination existed nor does she challenge the court's ruling that termination served MLH's best interests. Instead, respondent argues vaguely and with no direct reference to the record, that the trial court denied her procedural due process allegedly by not providing her or her counsel reports in a timely manner and that the circuit court's court-appointed counsel payment policy somehow prevented her counsel from preparing adequately for hearings and the termination hearing in particular. These arguments lack merit.

Although respondent alleges that reports were untimely, she fails to point to a single report that she and her counsel did not receive, fails to demonstrate from the record that any were in fact untimely submitted to the court, and fails to establish that her counsel lacked preparation or otherwise failed to provide her effective assistance of counsel. Examination of the extensive record indicates that numerous reports were prepared by caseworkers, and the dates referenced on the reports appear to be well in advance of the various hearings held by the court. Those same caseworkers testified at length about respondent's failure to comply with her parent-agency treatment plan and utter lack of benefit from services made available to her. The record also reflects that respondent and her counsel never objected to the admission of such reports. Further, the record reflects that respondent's counsel came prepared and appropriately advocated on her behalf at each and every hearing. From the record in this case, one cannot discern the commission of plain error that affected respondent's substantial rights.

Moreover, even assuming that plain error occurred as alleged, respondent has failed to establish that she suffered prejudice, i.e., that the outcome of the proceedings would have been different. The record demonstrates that petitioner met its burden of proving statutory grounds for termination of respondent's parental rights to MLH by clear and convincing evidence, and proved

by a preponderance of the evidence that termination served MLH's best interests. The trial court ensured that respondent's due-process rights were not violated by adequately giving her notice and opportunity to contest the allegations and evidence against her. The trial court properly applied the law and correctly ordered the termination of respondent's parental rights to MLH.

Respecting respondent's submission of the circuit court's court-appointed attorney payment policies and procedures document, the record indicates that she never submitted that to the trial court or otherwise made it a part of the lower court record. " 'This Court's review is limited to the record established by the trial court, and a party may not expand the record on appeal.' " *In re Rudell Estate*, 286 Mich App 391, 405; 780 NW2d 884 (2009), quoting *Sherman v Sea Ray Boats, Inc*, 251 Mich App 41, 56; 649 NW2d 783 (2002); MCR 7.210(A)(1). Accordingly, we decline to consider the exhibit attached to respondent's appeal brief. Moreover, respondent offers no real argument that her court-appointed counsel actually failed to review reports ahead of hearings.

Respondent has failed to establish her unpreserved claims that her procedural due-process rights and constitution right to effective assistance of counsel were violated. The record does not establish that any plain error occurred or that such alleged error affected respondent's substantial rights.

Affirmed.

/s/ Douglas B. Shapiro
/s/ James Robert Redford
/s/ Christopher P. Yates