*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

AMANDA MCCUTCHEON,

Plaintiff-Appellant,

v

FREMONT INSURANCE COMPANY,

Defendant-Appellee.

UNPUBLISHED
February 20, 2025
9:37 AM

No. 368012
Allegan Circuit Court
LC No. 2021-064403-CK

Before: SWARTZLE, P.J., and K. F. KELLY and MURRAY, JJ.

PER CURIAM.

Plaintiff-appellant Amanda McCutcheon appeals as of right the circuit court order (1) accepting the calculation of penalty interest offered by defendant-appellee Fremont Insurance Company, and (2) granting McCutcheon $5,046.91 in penalty interest. We vacate the trial court's order and remand for calculation of interest consistent with this opinion.

## I. BRIEF FACTS

This case arises out of a homeowner's insurance claim for hailstorm damage to McCutcheon's home in April 2020. At the time of the loss, McCutcheon's homeowner's insurance policy was through Fremont. The policy covered direct physical loss to property, and the repair and replacement cost coverages were limited to the amounts that McCutcheon actually spent to repair or replace the damaged property on a "functional replacement cost basis," as defined in the policy.

On May 15, 2020, McCutcheon filed a property-loss notice with Fremont. McCutcheon indicated that she was waiting for a contractor to provide a repair cost estimate. However, in July 2020, when still no estimate was provided, Dennis Rabidoux, a Fremont property claims adjuster, e-mailed a copy of Fremont's appraisal to McCutcheon, which totaled $31,706.95, and notified McCutcheon that he would be issuing a check soon. On July 7, 2020, Rabidoux sent a letter to McCutcheon, which stated the following:

You have made claim under policy number H 0584052 00, for loss and damage to your home at 869 North 16th Street, Otsego, MI 49078. Using industry

-1-

accepted standards and methods; we have determined the amount of your loss to be $31,706.95. After reduction for Recoverable Depreciation: $11,097.44 = $20,609.51. Less your $1,000.00 Deductible = and ACV Payment of: $19,609.51. You have 180 days from the receipt of this check to complete the repairs in order to receive the R/C Holdback of: $11,097.44.

The letter attached an "[Actual Cash Value (ACV)] Dwelling Check" in the amount of $19,609.51. In Rabidoux's affidavit, he explained that "[t]he ACV was calculated by taking the cost of repairs less depreciation for the age and condition of the roof and two sides of the siding." At some point, Rabidoux learned that the July 2020 ACV check had not been cashed, so he stopped payment on the check.

In August 2020, Rabidoux received an e-mail from McCutcheon's counsel informing him that she had been retained to represent McCutcheon in the property-loss negotiations. On September 11, 2020, McCutcheon's counsel sent Rabidoux an e-mail, suggesting that they settle the roof and siding claims separately. On September 12, 2020, Rabidoux responded as follows:

> When we spoke last, I was very clear about the options available for Ms. McCutcheon. Again, she can either accept the settlement as I presented it when I settled the loss, or she can choose legal action. There will be no deviation from this. If the issue is dollars (once again the numbers in Xactimate are absolute), she can opt for the appraisal process as outlined in the policy. The scope of loss however, is not up for discussion in any fashion. I explained this all in our last conversation, so it is difficult to understand why you have come back with a proposal outside of that conversation. Again, Ms. McCutcheon can accept the original settlement and I will re-issue the check with the stipulation that she [sign] a "Policy Holders' Release", or I will refer it to our legal counsel.

In January 2021, McCutcheon's counsel e-sent Fremont an estimate for roofing and siding repair, which was dated August 25, 2020, and totaled $78,938. Invoices for the siding and roof repair were later provided and indicated that the siding was repaired on October 29, 2020, and the roof was repaired on October 26, 2021.

McCutcheon subsequently filed a breach-of-contract claim against Fremont, arguing that Fremont unreasonably refused to pay the benefits she was entitled to under her homeowner's insurance policy, and that as a result, she was entitled to penalty interest under MCL 500.2006 of the Uniform Trade Practices Act (UTPA), MCL 500.2001 *et seq*. Fremont responded, arguing that it did not unreasonably refuse to pay McCutcheon and that McCutcheon was not entitled to penalty interest under the UTPA. In January 2023, the parties entered into a stipulated order of dismissal with prejudice. The order specifically noted that McCutcheon's claim for penalty interest was preserved. McCutcheon ultimately recovered $60,270.34 on her breach-of-contract claim with Fremont. This amount was paid in three installment payments—$30,000 on March 9, 2022; $21,520.34 on November 11, 2022; and $8,750 on December 15, 2022. On March 9, 2022, Fremont also paid McCutcheon an ACV payment of $7,758.11 for the siding claim.

In January 2023, McCutcheon formally moved for penalty interest under the UTPA. McCutcheon argued as follows:

> 5. On August 25, 2020, Plaintiff obtained an estimate from Premier Roofing & Exterior for $78,938.00 and submitted same to Defendant.[1]
>
> * * *
>
> 7. Under the Michigan Uniform Trade Practice Act, at MCL §500.2006, in first party cases when the insurer fails to pay benefits within 60 days of submission of a proof of loss, 12% penalty interest is owed to the insured.
>
> 8. Here Defendant paid Plaintiff a total of $60,270.34 in three payments, with the first payment of $30,000.00 paid on March 9, 2022, to Premier Roofing & Exterior, the second payment of $21,520.34 paid on November 11, 2022, and the third payment of $8,750.00 paid on January 4, 2023, which entitles Plaintiff to 12% penalty interest from October 25, 2020.
>
> 9. As of January 4, 2023, the total penalty interest owing was $12,494.30 . . . .

Fremont responded, arguing that McCutcheon was not entitled to any penalty interest. Fremont alleged that it never received satisfactory proof of loss from McCutcheon. Fremont specifically argued that McCutcheon improperly demanded that she be paid penalty interest on: (1) checks issued by Fremont but never cashed, and (2) roof replacement costs for over an entire year before the roof was replaced.

At the first hearing on McCutcheon's motion, McCutcheon proposed two potential start dates for the UTPA penalty-interest accrual.[2] First, McCutcheon proposed August 14, 2020, arguing that, because Fremont

> did not comply with subsection three of the UTPA[,] it excused [McCutcheon] from submitting a satisfactory proof of loss and it is assumed that a satisfactory proof of loss was submitted thirty days after [McCutcheon's] notice of loss which was filed on May 15, 2020, which would—thirty days after that would be June 15, 2020. Sixty days after that would be August 14, 2020.

McCutcheon then argued that, if the circuit court disagreed and found that Fremont complied with Subsection (3) of the UTPA, MCL 500.2006(3), then the appropriate start date would be March 29,

---

[1] There is no evidence that Fremont received this estimate before January 28, 2021, when McCutcheon's counsel sent the estimate in a letter to Fremont. McCutcheon appeared to concede this fact at trial.

[2] Notably, neither of these dates were the start date listed in McCutcheon's motion—October 25, 2020.

2021. McCutcheon explained that her previous counsel sent a letter to Fremont's counsel on January 29, 2021,[3] enclosing a copy of the estimate to repair "the home. Sixty days from that date of course would be March 29, 2021, and that would be the other possible starting date. But I believe the first one is applicable because they didn't provide—or they didn't follow the guidelines of subsection three."

At the second hearing on McCutcheon's motion, McCutcheon maintained that August 14, 2020, was the correct start date for penalty-interest accrual. Conversely, Fremont argued that McCutcheon provided a satisfactory proof of loss on January 29, 2021, and that "[p]enalty interest would then begin to run sixty days thereafter." Fremont further argued that McCutcheon's calculations were flawed in that they were calculated on amounts that were not yet owed, and they refused to credit past payments. Fremont clarified that "if you adjust the penalty interest day to March of 2021, and you provide the credit for the $19,000.00 payment made back in July of 2020, the number gets very small . . . . It comes down to approximately $5,000.00." The circuit court ordered Fremont to provide it with a calculation for penalty interest as follows:

> [*Circuit Court*]: So, defense needs to provide to the Court a UTPA amount based on their belief that it should not include the $19,609.51 from July of 2020. And then the Court is accepting plaintiff's—I—it wasn't actually marked as an exhibit, but—the two different amounts. One was calculating as indicated from October of '20 and the other from of March of 29th.

> And I would like the defense to supply the Court with the amount they believe UTPA would apply to and I would like that to be an issue—to include the issue of the $19,609.51.

> [*Fremont's Counsel*]: You want me to run that penalty interest calculation with the credit for the $19,000.00; correct?

> [*Circuit Court*]: Yes.

> [*Fremont's Counsel*]: And then am I calculating it from—from March of 2021?

> [*Circuit Court*]: Yes.

Accordingly, Fremont submitted a calculation resulting in a total penalty interest of $5,046.91. Fremont's penalty-interest calculation was as follows:

---

[3] This date appeared to be a misstatement throughout the proceedings because the letter was actually sent on January 28, 2021.

| Date | Event | Period | Claim | UTPA Interest | Calculation |
|---|---|---|---|---|---|
| | | | $60,270.34 | | |
| | | | | | |
| 7/9/2020 | $19,609.41 Payment | | ($19,609.41) | | |
| | Claim Balance | | $40,660.83 | | |
| 3/28/2021 | UTPA start * | 3/28/21-3/9/21 | | $4,760.96 | $40,660.83 x .12/365 = 13.76/day |
| | | | | | 346 days x 13.76 = 4,760.96 |
| 3/9/2022 | $30,000.00 Roof RCV payment | | ($30,000.00) | | |
| 3/9/2022 | $7,758.11 Siding ACV payment | 3/28/21-3/9/21 | ($7,758.11) | | |
| 3/10/2022 | Claim Balance | | $2,902.72 | | |
| | UTPA Daily Rate | 3/9/22 – 1/4/23 | | | $2,902.72 x .12/365 = .95/day |
| 1/4/2023 | $8,750.00 RCV payment – Heritage Handyman ** | | ($8,750.00) | $285.95 | 301 days x .95 = 285.95 |
| | | | Penalty Interest Total | $5,046.91 | |
| 3/2/23 | $21,520.34 Siding ACV payment | | | | |
| | | | | | |

\* Premier Roofing and Siding Estimate received by Fremont's counsel on January 28, 2021.

\*\* UTPA interest ends as checks issued to plaintiff by January 4, 2023 exceed the claim amount.

McCutcheon filed a supplement to her motion, requesting that the circuit court order Fremont to pay a total of $14,692.46 in penalty interest because Fremont did not comply with MCL 500.2006(3). Fremont responded, arguing that it did not *offer* $19,609.51 in July 2020, but *paid* it as an interim payment; therefore, MCL 500.2006(4) did not apply, and "Fremont should be allowed to take a credit in the calculation of penalty interest for the payments it made."

The circuit court ultimately accepted Fremont's calculation and ordered that Fremont pay McCutcheon $5,046.91 in penalty interest. The circuit court reasoned as follows:

> Defendant clearly paid $19,609.51 to the Plaintiff on July 9, 2020[4] and the Court accepts that the payment was made as an interim or merit payment and not as a final offer to settle the entire claim between the parties. There is no evidence in the record to support that July 9, 2020 payment was a final offer to settle all claims. Plaintiff admits that she refused to cash the check but her refusal should not place the Defendant in a position to be financially responsible for penalty interest on a payment that Plaintiff could, and in this Court's opinion should, have taken as an interim payment.

Notably, the circuit court failed to engage in an MCL 500.2006(3) analysis or explain why the penalty start date of March 28, 2021, was appropriate. The circuit court only discussed MCL 500.2006 to the following extent: "MCL 500.2006 provides that in first party cases when the insurer fails to pay benefits within 60-days of submission of a proof of loss, 12% penalty

---

[4] The circuit court and the parties interchange the dates of July 7, 2020 and July 9, 2020, when referring to the "ACV Dwelling Check"—of $19,609.51—that Rabidoux sent McCutcheon in a letter that was dated July 7, 2020. There are not two separate checks on those dates.

interest is owed to the insured." Also, McCutcheon's initial argument—that the penalty accrual began on October 25, 2020—was listed in the circuit court's final order, but McCutcheon's final argument—that the penalty accrual began on August 14, 2020—was not. McCutcheon moved for reconsideration, which the circuit court denied. McCutcheon now appeals.

## II. PENALTY INTEREST UNDER THE UTPA

"Matters of statutory and contractual interpretation present questions of law, which this Court reviews de novo." *Nickola v MIC Gen Ins Co*, 500 Mich 115, 122; 894 NW2d 552 (2017). "We will not set aside a trial court's factual findings absent clear error. MCR 2.613(C). Clear error is found only when on review of the entire record, the reviewing court is left with the definite and firm conviction that a mistake has been made." *Peters v Gunnell, Inc*, 253 Mich App 211, 221-222; 655 NW2d 582 (2002).

Under the UTPA, "when an insurer fails to pay a claim on a timely basis, a claimant may seek penalty interest." *Griswold Props, LLC v Lexington Ins Co*, 276 Mich App 551, 554; 741 NW2d 549 (2007) (*Griswold II*). "[A] first-party insured is entitled to 12 percent penalty interest if a claim is not timely paid, irrespective of whether the claim is reasonably in dispute." *Id*. MCL 500.2006(4) provides that in first-party cases, when the insurer fails to pay benefits within 60 days after receiving a satisfactory proof of loss, a 12% penalty interest is owed to the insured. "[S]atisfactory proof of loss does not require agreement of the parties as to the amount of damages, but is rather the process of the insured providing the documents and evidence required by the insurer to begin processing the claim . . . ." *Griswold Props, LLC v Lexington Ins Co*, 275 Mich App 543, 567; 740 NW2d 659 (2007) (*Griswold I*), reinstated in part and superseded in part by *Griswold II*. However, if the insurer does not comply with MCL 500.2006(3)—which requires the insurer to "specify in writing the materials that constitute a satisfactory proof of loss not later than 30 days after receipt of a claim unless the claim is settled within the 30 days"—then the insured is excused from submitting a proof of loss under MCL 500.2006(4), and the matter shall proceed as if a satisfactory proof of loss was submitted. MCL 500.2006(3); *Angott v Chubb Group Ins*, 270 Mich App 465, 486; 717 NW2d 341 (2006), overruled in part on other grounds by *Griswold II*.

McCutcheon first argues that the circuit court erred by determining that Fremont complied with MCL 500.2006(3). Although the circuit court did not directly make any determination regarding MCL 500.2006(3), the circuit court did not adopt McCutcheon's penalty-interest calculations, which were rooted in her argument that Fremont failed to comply with MCL 500.2006(3). The circuit court failed to consider whether Fremont complied with MCL 500.2006(3) and the effect of the noncompliance, if any, on the payment of penalty interest. The circuit court only discussed MCL 500.2006 to the following extent: "MCL 500.2006 provides that in first party cases when the insurer fails to pay benefits within 60-days of submission of a proof of loss, 12% penalty interest is owed to the insured." And Fremont does not argue on appeal that it did comply with MCL 500.2006(3). Rather, it asserts that the circuit court never found that Fremont complied with MCL 500.2006(3), as McCutcheon suggests, and that the court

> directed that penalty interest begin accruing on March 29, 2021 because
> [McCutcheon's] counsel proposed that date as an appropriate start date for penalty
> interest and it resolved the inherent defect in [McCutcheon's] calculations which

commenced penalty interest on the roof replacement costs before the roof replacement costs were owed.

McCutcheon filed a property-loss notice with Fremont on May 15, 2020. There is no indication in the record that Fremont specified in writing the materials that constituted a satisfactory proof of loss within 30 days after receiving McCutcheon's claim, pursuant to MCL 500.2006(3). In fact, Fremont did not e-mail its appraisal to McCutcheon until July 2, 2020. McCutcheon was, thus, excused from having to submit a proof of loss under MCL 500.2006(4), and it should be assumed that a satisfactory proof of loss was submitted 30 days after the claim of loss, which would have been June 15, 2020. See MCL 500.2006(3); *Angott*, 270 Mich App at 486. Accordingly, McCutcheon was entitled to 12% penalty interest on August 14, 2020—60 days after June 15, 2020, see MCL 500.2006(4); *Griswold II*, 276 Mich App at 554, 559, and the circuit court erred when it failed to make this determination.

## III. THE JULY 2020 CHECK

McCutcheon further argues that the circuit court erred by determining that: (1) Fremont's July 2020 check was not a final settlement offer, but a partial payment on the claim; and (2) McCutcheon's rejection of the check precluded her from recovering penalty interest on that portion—$19,609.51—of her eventual recovery.

After determining that the July 2020 check was an interim payment, and not a final offer of settlement, the circuit court stated as follows: "[McCutcheon] admits that she refused to cash the check but her refusal should not place [Fremont] in a position to be financially responsible for penalty interest on a payment that [McCutcheon] could, and in this Court's opinion should, have taken as an interim payment."

Relying on a portion of MCL 500.2006(4)—which provides that "[i]f payment is offered by the insurer but is rejected by the claimant, and the claimant does not subsequently recover an amount in excess of the amount offered, interest is not due"—McCutcheon further argues that because she recovered an amount in excess of the July 2020 check, "penalty interest never stopped accruing from the date it started on August 14, 2020 . . . ." The circuit court did not refer to this portion of MCL 500.2006(4) in its order, but it did adopt Fremont's penalty-interest calculations, which included a credit for the July 2020 check. However, under the plain terms of MCL 500.2006(4), McCutcheon was entitled to penalty interest without removing the amount of the July 2020 check, as McCutcheon ultimately did recover an amount in excess of that check. And Fremont has not pointed us to any law that requires a different outcome.

## IV. CONCLUSION

The circuit court's order is vacated, and the matter is remanded to the trial court for a recalculation of penalty interest consistent with this opinion. We do not retain jurisdiction.

/s/ Brock A. Swartzle
/s/ Kirsten Frank Kelly
/s/ Christopher M. Murray

-7-